Craig Frederick BUSSE, Appellant

v.

Kimberly S. BUSSE, Appellee.

Craig Frederick Busse, Appellee

v.

Kimberly S. Busse, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 31, 2007.

Filed April 11, 2007.

Robert L. Garber, Pittsburgh, for Busse, C.

Margie Hammer, Pittsburgh, for Busse, K.

BEFORE: FORD ELLIOTT, P.J., ORIE MELVIN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Husband, Craig Busse, and wife, Kimberly Busse, have filed cross appeals from the Order filed January 24, 2006, granting in part and denying in part the parties' objections to three master's reports, filed August 24, 2004, May 26, 2005, and July 5, 2005, respectively.

¶ 2 The following is a summary of the pertinent facts and procedural history. The parties to this divorce action, which the court characterized as "particularly contentious in every aspect," Trial Court Opinion, Marsili, J., 1/24/06, at 1, married on August 28, 1981, had two sons, now adults, and separated in October 2001. Husband filed this action on December 18, 2001. Wife thereafter filed a petition requesting, *inter alia*, support, alimony *pendente lite* (APL), and equitable distribution.

¶ 3 During their marriage, the parties formed a successful business, Craig Trading Corporation, which imported and traded meat products. The parties were the sole, joint shareholders of the corporation. Husband was a commodities trader and operated the business, while wife, who has little employment history, performed secretarial-type tasks for the business.

¶ 4 Due to the fluctuations in his actual earnings, husband's earning capacity was determined based upon a three-year average of his actual income. Over the course of these proceedings his earning capacity was calculated multiple times and ranged from a low of $24,000 per month to just over $30,000 per month. Record, No. 10 at 8 ¶ 1; Record, No. 48 at 7–8 ¶ 9; Record, No. 70 at 9–10 ¶ 3; Record, No. 79 at 9 ¶ 1. Wife's earning capacity was determined to be $800 per month. Record, No. 10 at 8 ¶ 2; Record, No. 70 at 9–10 ¶ 3.

¶ 5 Husband's APL obligation was calculated based upon his earning capacity and was initially set at $7,026, later raised as high as $10,880 per month, and ultimately modified to $9,280, which was the current Order at the time the parties filed their appeals. *See* Record, No. 10 at 9 ¶ 1; Record, No. 23, Trial Court Order, Marsili, J., 10/1/02, ¶ 4; Record, No. 48 at 8 and Trial Court Order, Marsili, J., 7/14/03; Record, No. 70 at 9–10 ¶ 3. Husband filed three petitions to modify APL, each time alleging his circumstances had dramatically changed.[1] Record, No. 21; Record, No. 73; Record, No. 100. With one exception, his petitions were denied. Record, No. 48; Record, No. 79; Record, No. 103 at 3 ¶ 1–

---

1. After the appeals were filed in this case, husband filed a fourth petition to modify APL on February 15, 2006, which the court denied. Record, No. 132.

2. In each proceeding husband's credibility was questioned. *See* Record, No. 10 at 3 ¶ 17; Record, No. 48 at 6–7; Record, No. 79 at 9 ¶ 4; Record, No. 103 at 3 ¶ 1.

¶ 6 Wife filed four petitions for contempt and counsel fees, alleging husband was not paying his APL obligation. Record, No. 24; Record, No. 71; Record, No. 99; Record, No. 128. Each time husband was found to be in willful non-compliance and each time wife's petition was granted. Record, No. 59 at 5–6; Record, No. 82 at 6; Record, No. 99, Trial Court Opinion, Marsili, J., 3/21/05, at 2 ¶ 3.

¶ 7 Ultimately, on July 5, 2005, a master who had been appointed to address the claims of divorce, equitable distribution, alimony, APL and requests to modify APL, counsel fees, and expenses, filed a lengthy report after a total of ten days of testimony on these issues. Record, No. 107. The master recommended, *inter alia*, a 50–50 split of the marital estate. *Id.* at 50–51. He examined the parties' pre-nuptial agreement and found it protected only specific assets, which assets were no longer in existence, and it did not protect any marital assets. *Id.* at 10–14, 46. He also awarded wife $25,000 in counsel fees. *Id.* at 44–45. He found husband to be incredible. *Id.* at 45. He also noted that $187,712 wife took from the parties' joint account was included in wife's share of the marital estate. *Id.* at 51. Both parties filed exceptions to the report. Record, Nos. 122, 123.

¶ 8 On January 24, 2006, the court entered the Opinion and Order from which the parties now timely appeal. Record, Nos. 133, 135. In it, the court approved all of the master's findings of fact, conclusions of law, recommendations, and proposed Order, except that it granted wife's exception as to counsel fees, thereby awarding her an additional $25,000 in counsel fees for a total of $50,000. Record, No. 130, at 61–62.

¶ 9 Husband asks us to review the following questions:

I. Whether the trial court committed an abuse of discretion, reversible errors of law, and a misapplication of law in repeatedly miscalculating the net monthly income of husband as the court's calculations and conclusions are against the weight of the evidence?

II. Whether the trial court committed an abuse of discretion and misapplied the law in awarding alimony *pendente lite* to wife as the weight of the evidence does not support wife's claim for alimony *pendente lite*, nor the amount that was awarded?

III. Whether the court committed an abuse of discretion, reversible errors of law, and a misapplication of the law in distributing to wife non-marital assets which were properly identified, traced, and excluded from equitable distribution as non-marital property in the parties' pre-nuptial agreement?

IV. Whether the trial court committed an abuse of discretion and reversible errors of law in awarding wife counsel fees?

Husband's brief at 6–7.

¶ 10 In wife's cross-appeal, she raises the following questions:

I. Whether the lower court properly applied the law or abused its discretion when it based husband's alimony *pendente lite* obligation on his earning capacity as opposed to his actual earnings based upon the circumstances and evidence of this case?

II. Whether the lower court properly applied the law or abused its discretion when it awarded alimony *pendente lite* to wife?

III. Whether the lower court properly applied the law and its findings were supported by substantial evidence in the record when it determined that Husband's Mellon IRA account and the $300,000.00 certificate of deposit were martial assets subject to equitable distribution?

IV. Whether the lower court properly applied the law in awarding counsel fees to Wife but should have awarded more counsel fees under the circumstances of this case?

V. Whether the lower court abused its discretion and misapplied the law under the circumstances by distributing only 50% of the marital assets to Wife?

VI. Whether the lower court abused its discretion and misapplied the law in its determination of the value of Craig Trading Corporation?

VII. Whether the lower court abused its discretion by failing to require Husband to reimburse Wife for taxes she incurred as a result of his issuing k–1's to her where there was no dispute she had never received any income or other distributions from the corporation?

Wife's brief at 1.[2]

¶ 11 The first two issues of both husband and wife relate to the award of alimony *pendente lite* to wife. In his first issue,

husband argues for a disjointed 22 pages as to why the APL award was erroneous. His arguments can be summarized as follows:

¶ 12 The master erred in calculating husband's earning capacity based on a three-year average of his income, since included in the calculation was his 2001 income of $619,000, which was inaccurate and resulted in an inflated three-year average. He complains the 2001 income figure does not reflect the funds wife withdrew that year—$187,712.42 from the parties' joint Mellon Bank Money Market account and $44,090.50 from the corporation. Husband argues the gross amount of these withdrawals was $377,000, and that amount should be attributed to wife as gross income for 2001 and not attributed to him. Husband's brief at 13–15, 22–23, 33–34.[3]

¶ 13 Husband also complains that wife withdrew an additional $50,262.45, a gross amount of $85,000 according to him, from the corporation in January and February 2002. He acknowledges that the court, in its September 30, 2002, Order, credited husband $23,000 for APL arrearages which he alleges was to compensate for corporate funds withdrawn by wife. He contends, however, the full extent of wife's withdrawals was not realized until the final hearings in this matter in 2004–2005. *Id.* at 18–19, 23, 29.

---

2. At the time the parties filed their appeals, in February 2006, the divorce Decree, filed May 2, 2006, had not yet been entered. *See* Record, Nos. 133, 135, 148. Nevertheless, these appeals are properly before us. *See Schenk v. Schenk*, 880 A.2d 633, (Pa.Super.2005), *citing Campbell v. Campbell*, 357 Pa.Super. 483, 516 A.2d 363 (1986) (Stating that "although Orders of property distribution are not appealable until entry of a final divorce Decree, case law holds that an award of equitable distribution is appealable where a divorce Decree is entered while an appeal is pending.").

3. Wife argues that husband is alleging the master erred in using a three-year average income rather than husband's actual income, and that allegation is waived for his failure to argue it prior to this appeal. It appears to this Court that husband is arguing not that it was error to use a three-year average, but that the figures used in that calculation were incorrect. Further, it appears to this Court that he has made these allegations both before the master and before the trial court.

¶ 14 In addition, in his 22–page argument on this issue, husband repeatedly contends the master erred in including in his income $215,720 for each of the years 2001 through 2004, based upon a change to the corporation's accounting method from the cash to the accrual method, a change he avers was not made for collusive reasons but was necessitated because for the first time, in December 2001, the corporation had inventory at year end. According to husband, the accounting change resulted in the current taxation of $862,879 of previously untaxed income generated from the creation of the business in 1989, through December 31, 2001, and represents the net difference between accounts receivable and accounts payable for that time. The impact of the accounting method change was spread out over four years for a total of $215,729 per year. He contends this was "phantom income" and "merely an accounting construct with no current economic benefit nor additional cash flow affect or benefit on the parties" and thus should not have been considered in calculations of his average income/earning capacity. *Id.* at 15–17, 19–24, 29–30, 34.

¶ 15 Husband, moreover, contends the master erred in including the corporation's retained earnings in the calculations that were not liquid and could not be liquidated without liquidating the company. He argues much of the retained earnings were not liquid because they were collateral for the corporate credit line, they were in the form of inventory, loans to shareholders (i.e., to husband), other assets, and depreciated furniture, fixtures, and vehicles. He argues the retained earnings for each year must be analyzed separately to determine the portion that is liquid. *Id.* at 19, 25–28, 34.

¶ 16 In his second issue, husband argues an award of APL is based only upon need, and wife did not need APL according to the relevant factors, i.e., "the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties." *Id.* at 35–38. Underlying this issue are mostly the same arguments he made in his first issue. In addition, he claims wife's expenses were substantially reduced while he continued to support the parties' children and maintain the marital residence. He further contends wife's submitted budget was based upon her expenses while in the marital home and not the apartment to which she moved after the parties separated. Husband also alleges wife enjoyed a financial advantage when the court awarded her a $106,000 advance from the marital estate. *Id.* at 35–43.

¶ 17 We remain cognizant of the following principles as we review these allegations:

APL is an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding. APL is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse. Also, and perhaps more importantly, APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare.... APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse.

*Schenk v. Schenk,* 880 A.2d 633, 644–645 (Pa.Super.2005) (citations and quotations omitted).

¶ 18 "In ruling on a claim for alimony *pendente lite,* the court should consider the following factors: the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties." *Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382, 389 (1996). "An award of alimony *pendente lite* may be modified or vacated by a change in circumstances.... It is the burden of the party seeking to modify an order of support to show by competent evidence that a change of circumstances justifies a modification." *Id.* at 388.

¶ 19 Finally we note that our review of an Order regarding APL is circumscribed: "If an order of APL is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court." *Dalessio v. Dalessio,* 805 A.2d 1250, 1252 (Pa.Super.2002).

¶ 20 As to the $187,712.42 wife undisputedly withdrew from the parties' joint account, she was attributed with that amount as to her share of the equitable distribution award. *See* Record, No. 107 at 51; Record, No. 130 at 50. Certainly husband should not receive credit for this amount in the calculation of his income and also receive credit for it in his share of the equitable distribution award. *See Cerny v. Cerny,* 440 Pa.Super. 550, 656 A.2d 507, 509 (1995) (explaining that in a previous appeal we had instructed the court that a payment cannot be considered in both the equitable distribution award and in calculating a support obligation). Husband has not convinced this Court that the master and trial court erred in dealing with this issue in the equitable distribution phase rather than in the calculation of husband's income for purposes of determining his APL obligation. Thus, we must reject this allegation.

¶ 21 As for the $44,090.50 wife allegedly withdrew from the corporation in late 2001, and the $50,262.45 she allegedly withdrew from the corporation between January and February 2002, we reject these allegations for following reasons. Husband's brief at 14, 18–19.

¶ 22 Husband repeatedly made allegations to the masters and trial court that wife took substantial funds from the parties' accounts. As discussed *supra,* wife undisputedly withdrew $187,712.42 and that amount was addressed in equitable distribution. In addition, it was determined wife took $23,000 from the parties' accounts between January 9th and April 18, 2002, and thus husband was given a $23,000 credit applied to APL arrears. Record, No. 10 at 8 ¶ 41; Record, No. 23 at 8; Record, No. 79 at 7 ¶ 23. The masters and trial court repeatedly rejected husband's claims that wife took more than those funds. They found he failed to provide evidence to substantiate his claims, that wife properly substantiated her withdrawals, that he received all credit he was due, and husband's claims were incredible. Record, No. 10 at 4 ¶ 26; Record, No. 23 at 6, 8; and Trial Court Order, Marsili, J., 9/30/02, ¶ 3; Record, No. 107 at 32–34; Record, No. 130 at 49–51.

¶ 23 Husband complains that the full extent of wife's withdrawals was not realized until the 2004–2005 hearings and, in support of his allegations, he cites to wife's testimony from the July 28, 2004, hearing. Husband's brief at 14, 18–19. The master and the trial court reviewed the evidence presented at the 2004–2005 hearings and found husband's allegations as to this issue to be incredible and found wife to be credible. The fact-finder is in the best position to assess credibility of witnesses and we do not disturb credibility determinations on appeal. *Doherty v. Doherty,* 859 A.2d 811, 812–813 (Pa.Super.2004); *accord Anzalone v. Anzalone,* 835 A.2d 773, 780 (Pa.Super.2003). We conclude husband simply

has failed to prove that the masters and trial court erred in their repeated and consistent conclusions.

¶ 24 Next, we consider husband's allegation that the court erred in including $215,720 in his income for each of the years 2001 through 2004, when calculating his three-year average income, which amount was based upon a change to the corporation's accounting method.[4]

¶ 25 We affirm the master's and the court's decision for three reasons. First, although husband and his expert refer to this as "phantom income" or "paper income", according to both it is "income." *See e.g., N.T.,* 4/21/03, at 42–43; *see also* Record, No. 130 at 34. Second, "[A] master's report and recommendation are to be given the fullest consideration...." *Moran v. Moran,* 839 A.2d 1091, 1098 (Pa.Super.2003). The court has done so in this case, and so have we. Third, this decision is largely based upon credibility determinations. *See* Record, No. 48 at 7 ¶ 6, 8; Record, No. 79 at 9 ¶ 4; Record, No. 107 at 20–21, 23, 43; Record, No. 130 at 33–34. We do not reverse credibility determinations on appeal. *Doherty* at 812–813; *accord Anzalone,* at 780. This issue has been litigated repeatedly and the conclusions have been consistent. Husband has not convinced this Court that an error has been made.

¶ 26 As for husband's argument that only liquid retained earnings of the corporation may be considered in calculating his income for APL purposes, he cites no authority for this position and thus we

find it is waived. *See e.g. Jones v. Jones,* 878 A.2d 86, 90–91 (Pa.Super.2005).

¶ 27 The only arguments as to husband's second issue on appeal that are not a reiteration of his arguments as to his first issue are that wife does not need APL based upon the relevant factors—"the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation and surroundings of the parties." Husband's brief at 35–38. He also contends wife does not have the same expenses as she did in the marital home, and she did not need APL since she was awarded an advance of her equitable distribution award. *Id.* at 35–43.

¶ 28 We simply find no justification to disturb the APL award. Husband's earning capacity at its lowest was determined to be $24,000 per month, and at one point was determined to be over $30,000 per month, whereas wife's was determined to be $800 per month. Given this disparity, plus all other relevant factors, an APL award to wife in the amount of between $9,280 and $10,880, per month does not appear to be unreasonable in order to ensure that the parties were on equal footing to pursue the divorce. We thus will not disturb this award.

¶ 29 In his third issue on appeal, husband argues the court erred in failing to exclude certain assets from equitable distribution pursuant to the parties' pre-nuptial agreement.[5] Specifically husband claims the proceeds from his profit sharing plan with his former employer, the

---

4. We first note that we must reject wife's allegation that this income was not included in the calculation of the APL award as it appears that it was included in the calculation of the initial award. *See* Record, No. 10 at 2 ¶ 7 (The $126,385 in K–1 S Corp income apparently includes the $215,720 "phantom income," *see* Record, No. 48 at 4 ¶ 16(c)). Also, as wife acknowledges, it appears that in ruling on husband's subsequent petition to

modify, and in calculating husband's three-year average income, the master included a small portion, only $10,000, of the "phantom income" in calculating husband's 2002 income. *See* Record, No. 48 ¶ 17.

5. As husband noted, the validity and enforceability of the agreement was not at issue. Husband's brief at 44.

Gurrentz International Pension Fund, and the proceeds from the sale of his premarital residence, the Jefferson Heights Road home, both of which he claims were non-marital property, should have been excluded. Husband's brief at 44–52.

Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*Smith v. Smith,* 904 A.2d 15, 18 (Pa.Super.2006), *quoting McCoy v. McCoy,* 888 A.2d 906, 908 (Pa.Super.2005).

■■■■ ¶ 30 Upon review, we find the following: Husband lacked evidence to prove that he rolled over the Gurrentz pension fund proceeds into a Mellon IRA account as he claimed. N.T., 11/11/04, at 104–109; N.T., 2/3/05, at 28. In addition, he ultimately conceded he may have made an additional contribution to that account in 1989, during the parties' marriage. N.T., 11/15/04, at 77. Further, he undisputedly consolidated the account he alleged to contain the proceeds of the Gurrentz pension with various marital accounts. He conceded he could not identify the alleged non-marital funds from the consolidated funds. N.T., 2/3/05, at 56–57. Where pre-marital funds cannot be traced due to the commingling with marital funds, a court does not abuse its discretion in upholding a master's finding that the commingled funds are a marital asset. *See Winters v. Winters,* 355 Pa.Super. 64, 512 A.2d 1211, 1215–1216 (1986). The master, however, gave the husband the "benefit of the doubt" and considered $60,000, the amount alleged to have been in the pension fund at the time the plan was terminated, to be protected by the pre-nuptial agreement from distri-

bution. Record, No. 107 at 14; Record, No. 130 at 48–49. Under the circumstances, we find no abuse of discretion.

■■■■ ¶ 31 In addition, husband claims that the proceeds from the sale of the Jefferson Heights residence should be excluded from equitable distribution pursuant to the pre-nuptial agreement. He contends that the proceeds can be traced to the purchase of a $300,000 Mellon Bank CD used as collateral for a line of credit for their corporation. Husband's brief at 50–51. Our review reveals that at the hearing before the master, husband testified that the proceeds were used in the purchase of the marital residence. *See* N.T., 11/11/04, at 141–142; N.T., 2/3/05, at 60–61; Record, No. 107 at 18–19. In his exceptions to the master's report he alleged "The master erred in determining that plaintiff did not use the proceeds from his non-marital home for the purchase of the Trafford, Pennsylvania, real estate." Record, No. 122 ¶ 9. Yet, in his brief on his exceptions filed from the master's report, he alleged that the proceeds were used to purchase the CD underlying the corporate credit line. Record, No. 126 at 2. At the hearing before the master, however, he had alleged that he and wife bought the CD with $300,000 of their own money, and he did not mention the proceeds from the sale of the Jefferson Heights property. N.T., 11/10/04, at 53–54. We find the master did not err in concluding the proceeds from the sale of the Jefferson Heights property were no longer protected if and when they were used to purchase the marital estate, as husband claimed they were at the hearing before the master. The marital estate was undisputedly joint property and the pre-nuptial agreement specifically allowed the parties to make a gift to the other or register an asset in joint ownership. *See* Record, No. 130 at 45. Certainly the court did not err in confirm-

ing the master's decision as to this issue when husband could not get his story straight as to the disposition of the proceeds from the sale of his premarital home.

¶ 32 In husband's final issue on appeal, he contends the court abused its discretion in awarding wife attorneys' fees since wife was not credible, he did not get credit in equitable distribution for wife's withdrawals of $66,065, she received APL but did not establish she needed APL, she had a superior ability to pay attorneys' fees based upon her withdrawals and the court's granting to her of an equitable distribution advancement, and his contentions were not vexatious, dilatory, obdurate, nor in bad faith. Husband's brief at 53–54. Husband alleges an award of counsel fees under 42 Pa.C.S.A. § 2503, **Right of participants to receive counsel fees,** like an award under 23 Pa.C.S.A. § 4351, **Costs and fees,** is a sanction which is not justified since his contentions had merit and the court abused its discretion in its Orders.

¶ 33 The master recommended that husband pay wife $25,000 in counsel fees because husband prolonged the already extensive litigation as he was not forthcoming with information wife requested, and wife incurred counsel fees as a result of husband's conduct. Record, No. 107 at 44–45. The court granted wife's exception and awarded her an additional $25,000 for counsel fees based upon husband's ability to pay, the parties' respective financial resources, the vast differences in their earning capacities, husband's conduct which resulted in greatly protracted litigation, and the value of the legal services rendered. Record, No. 130 at 58–60.

 ¶ 34 Upon review, we first note that the court awarded counsel fees to wife, not based upon the statutory provisions husband cited, but rather upon sec-

tion 3702, **Alimony Pendente lite, counsel fees, and expenses,** of the Divorce Code, 23 Pa.C.S.A. §§ 3101 *et seq. See* Record, No. 130 at 58. The following principles apply to our review of such awards:

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Teodorski v. Teodorski,* 857 A.2d 194, 201 (Pa.Super.2004), *quoting Anzalone, supra* at 785–786. "Counsel fees are awarded only upon a showing of need." *Teodorski* at 201, *quoting Harasym v. Harasym,* 418 Pa.Super. 486, 614 A.2d 742, 747 (1992). "In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate." *Plitka v. Plitka,* 714 A.2d 1067, 1070 (Pa.Super.1998). Also pertinent to our review is that, "in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder." *Teodorski* at 201, *quoting Verdile v. Verdile,* 370 Pa.Super. 475, 536 A.2d 1364, 1369 (1988).

 ¶ 35 Under the facts of this case, we cannot find that the court abused its discretion and thus, given our standard of review, we must affirm the award of counsel fees. The court's Opinion makes clear that it made the award only after considering the relevant factors. It found husband

was able to pay the award. It further considered the disparate financial resources of each party, particularly considering the vast differences in the parties' earning capacity, the value of the legal services rendered, which were substantial given the protracted litigation, and the equitable distribution award. Although wife received 50% of the substantial marital property, the court noted that husband's actions resulted in the protracted litigation and thus justice dictated that he pay a substantial portion of wife's legal fees rather than wife paying from her share of the distribution of marital property. Record, No. 130 at 58–60. In doing so, the court ensured that wife was not placed at a financial disadvantage due to husband's conduct. *See Teodorski* at 201 (stating that "[t]he purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage."). It also can be said that, given the circumstances, the award effectuated economic justice as between these parties. *See Schubert v. Schubert*, 398 Pa.Super. 284, 580 A.2d 1351, 1356 (1990) (stating that "the purpose of an award of counsel fees is to insure that a financially dependant spouse will be able to maintain or defend against an action for divorce as well as to effectuate economic justice between the parties."). Thus, we must affirm.

¶ 36 Wife's first three issues on appeal having been considered in the context of husband's first three issues, we turn to wife's fourth issue in which she contends the court properly awarded her counsel fees but should have awarded $100,000 rather than $50,000. The learned trial court considered the very arguments wife now makes to this Court-that she has incurred over $150,000 in legal fees in this divorce action and that she incurred substantial fees due to husband's actions. *See* Record, No. 130 at 57–59; wife's brief at 56–60. The court also considered the financial resources available to each party. We find the court considered the proper factors in fashioning its award. Wife has not convinced this Court that the trial court abused its discretion in awarding her $50,000 in counsel fees.

¶ 37 Wife next contends the court erred in awarding her only 50% of the marital estate, and that she should have received 60%. She contends this is based upon the vast discrepancy in the parties' respective earning capacities, wife's role as caretaker of the home and children, her responsibilities in the parties' business, the length of the marriage, the relative needs of the parties, the parties' high standard of living, and husband's separate estate and expected inheritance. Wife's brief at 60–63.

¶ 38 Pursuant to section 3502, **Equitable Division of marital property** (a) **General rule,**

when fashioning equitable distribution awards, the trial court must consider: the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation or marital property, value of each party's separate property, standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children. 23 Pa.C.S.A. § 3502(a)(1)-(11).

*Mercatell v. Mercatell,* 854 A.2d 609, 611 (Pa.Super.2004).

¶ 39 "The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion." *Id.* at 611, *citing Gaydos v. Gaydos,* 693 A.2d 1368, 1376 (Pa.Super.1997) *(en banc).* We will not reweigh them. "We look at the distribution as a whole, in light of a trial court's overall application of the factors enumerated at 23 Pa.C.S.A. § 3502(a)." *Schenk v. Schenk,* 880 A.2d 633, 639 (Pa.Super.2005). In addition we note, "the trial court has the authority to divide the award as the equities presented in the particular case may require." *Mercatell* at 611, *quoting Drake v. Drake,* 555 Pa. 481, 725 A.2d 717, 727 (1999).

¶ 40 The court noted the master's thorough analysis of all facets of the case, including the parties' respective ages, earning capacities, and expenses, the length of the marriage, their standard of living, and their respective contributions to the business. Record, No. 130 at 53–55; Record, No. 107 at 50–51. The court also noted that wife was not awarded alimony but, significantly, had received a substantial amount of APL over the past several years, with one full year amounting to approximately $117,000, and she would receive significant assets from the marital estate. Record, No. 130 at 54. We find the distribution was fashioned after much thoughtful consideration, it was within the discretion of the court, and we are unable to discern a reason to disturb it.

¶ 41 Next, wife contends the court erred in determining the value of the corporation was $590,000, which was in accordance with the testimony of wife's expert and was based upon its value as of December 31, 2003, after consideration of the tax liability incurred due to the change in accounting method. *See* Record, No. 107 at 19–23. Wife argues the value should be determined as of the parties' separation date and before consideration of the tax liability. This is largely based upon wife's arguments that husband intentionally and unnecessarily caused the tax liability and because husband was in exclusive control of the corporation post-separation. Wife's brief at 62–65. The court considered both parties' exceptions to the valuation. Record, No. 130 at 35–38, 55–56. It explained that although wife's arguments were valid, the master had effectuated economic justice between the parties in the 50–50 equitable distribution and in awarding wife substantial APL over the years and in his award of attorneys fees to wife. *Id.* at 56.

¶ 42 A court has some discretion in choosing a valuation date, but the preferred date of valuation is the date of distribution, not the date of separation. *Nagle v. Nagle,* 799 A.2d 812, 820 (Pa.Super.2002), *citing Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988). It is sometimes more appropriate to use the separation date, however, in some circumstances, such as where one spouse consumes or disposes of marital assets. *Nagle* at 820–821. Wife contends such is the case here.

¶ 43 We find no error in the trial court's decision to affirm the master as to this issue. First, we remain cognizant that "[A] master's report and recommendation are to be given the fullest consideration...." *Moran v. Moran,* 839 A.2d 1091, 1098 (Pa.Super.2003). The court did give proper consideration to the master's recommendation here. Also, the distribution date is the preferred date and here, December 31, 2003, was much closer to the distribution date than to the parties' separation date. Finally, we note the goal of the Divorce Code is the achievement of economic justice. *See Nagle* at 821, *citing* 23 Pa.C.S.A. § 3502(a). The trial court believed that the overall distribution, which is this Court's concern, effectuated economic justice, and we have no reason to believe it does not.

¶ 44 Finally, wife contends the court erred in not requiring husband to reimburse wife for taxes she incurred as a result of the change to the corporation's accounting method. Wife's brief at 66–67. The master recommended that wife not receive an award for these liabilities since the parties were living together and sharing in the income and lifestyle produced by the corporation.[6] The master further concluded that wife can afford to pay the tax liability with the APL she has received and with her share of equitable distribution. Record, No. 107 at 42–44. The court agreed with the master's overall analysis. Record, No. 130 at 56–57. We find no reason to disturb these findings.

¶ 45 For the reasons discussed above, we conclude the trial court did an admirable job in effecting economic justice between the parties in this protracted and contentious litigation; we reject the parties' allegations of error.

¶ 46 Order affirmed.

---

**6.** Although we are not to consider items outside the official record, we note that husband's characterization of the income as "previously earned and untaxed" between 1989 and December 31, 2001, and his characterization as to the tax on that income as "deferred and now due" lends additional credence to this finding. Husband's brief at 15–16, 31.