J-A22038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KIMBERLY A. DOMIANO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID R. DOMIANO | |
| Appellant | No. 2001 MDA 2015 |

Appeal from the Decree October 15, 2015
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2004-41310

BEFORE: GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 06, 2016**

Appellant, David R. Domiano ("Husband"), appeals from the decree entered in the Lackawanna County Court of Common Pleas, which granted the parties a divorce and equitably distributed the parties' marital property. We affirm.

The relevant facts and procedural history of this appeal are as follows. Husband and Kimberly A. Domiano ("Wife") married on November 11, 1990. Two children were born of the marriage. During their marriage, the parties acquired from Husband's mother the property on which the parties built a marital home. On May 21, 1992, Husband's mother transferred the property solely to Husband.

Procedurally, Wife filed a complaint in divorce on October 29, 2004. By order dated March 8, 2007, and filed on March 9, 2007, the court

appointed a Master. The Master was unable to hold an equitable distribution hearing for several years due to Husband's change in representation, as Husband proceeded *pro se* and with counsel at different times, and Husband's bankruptcy proceedings. On August 26, 2010, the Master held an equitable distribution hearing, at which Husband appeared *pro se*. The Master filed a Report and Recommendation on April 17, 2013, distributing the parties' marital property. On April 26, 2013, Husband filed forty-seven exceptions to the Master's Report. On September 19, 2013, the court held oral argument on Husband's exceptions.

By order dated November 25, 2013, and filed on November 26, 2013, the court denied all but five of Husband's exceptions. The court remanded the remaining five exceptions to the Master to allow the parties to present additional evidence. On December 23, 2013, Husband filed a motion to have the court certify the November 25, 2013 order for interlocutory appeal. The court denied Husband's motion by order dated March 7, 2014, and filed on March 10, 2014.

On October 8, 2014, the Master held a remand hearing on Husband's remaining five exceptions. On March 17, 2015, the Master filed a Report and Recommendation Following Remand. On April 6, 2015, Husband filed exceptions to the Master's March 17, 2015 Report and Recommendation. The court held oral argument on Husband's exceptions on July 16, 2015. By order dated September 18, 2015, and filed on September 21, 2015, the

court denied all of Husband's exceptions and accepted the findings of fact and recommendations of the Master assigned to the issue of equitable distribution.

On October 15, 2015, the court entered a final divorce decree. By the October 15th decree, the court adopted the Master's Report and Recommendation dated April 17, 2013, the Master's Report and Recommendation Following Remand dated March 17, 2015, and the court's order dated September 18, 2015. On November 12, 2015, Husband filed a timely notice of appeal. The court ordered Husband on February 9, 2016, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Husband timely filed his statement on February 16, 2016.

Husband raises the following issues for our review:

> WHETHER THE HONORABLE TRIAL COURT ABUSED ITS DISCRETION OR COMMITTED AN ERROR OF LAW IN ITS [DECREE] OF OCTOBER 15, 2015 BY DENYING [HUSBAND'S] EXCEPTIONS AND ADOPTING THE MASTER'S REPORT & RECOMMENDATION WHEN THE REPORT AND RECOMMENDATION WAS FILED 2.5 YEARS (32 MONTHS) AFTER THE HEARING, CONTRARY TO PENNSYLVANIA RULE OF CIVIL PROCEDURE, RULE 1920.55-2?

> WHETHER THE HONORABLE TRIAL COURT ABUSED ITS DISCRETION OR COMMITTED AN ERROR OF LAW IN ITS [DECREE] OF OCTOBER 15, 2015 BY DENYING [HUSBAND'S] EXCEPTIONS AND ADOPTING THE MASTER'S REPORT & RECOMMENDATION WHEN THE MASTER DENIED [HUSBAND] DUE PROCESS BY FAILING TO ALLOW [HUSBAND] AND IN LIMITING [HUSBAND'S] PRESENTATION OF TESTIMONY AND EVIDENCE?

> WHETHER THE HONORABLE TRIAL COURT ABUSED ITS DISCRETION OR COMMITTED AN ERROR OF LAW IN ITS [DECREE] OF OCTOBER 15, 2015 BY DENYING [HUSBAND'S] EXCEPTIONS AND ADOPTING THE MASTER'S REPORT & RECOMMENDATION WHEN THE MASTER'S FINDINGS AND RECOMMENDATIONS REGARDING THE VALUATION AND OWNERSHIP OF PROPERTY ARE NOT SUPPORTED BY THE RECORD?

(Husband's Brief at 4).

We review equitable distribution matters as follows:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence. When reviewing an award of equitable distribution, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Smith v. Smith*, 904 A.2d 15, 18 (Pa.Super. 2006) (internal citations and quotation marks omitted). "[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa.Super. 2011) (quoting *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa.Super. 2003)). "[T]he trial court can accept all, some or none of the submitted testimony in determining the value of marital property." *Isralsky v. Isralsky*, 824 A.2d 1178, 1185 (Pa.Super. 2003).

When a court endeavors to split marital property equitably, it must take into consideration the factors delineated in Section 3502(a) of the Divorce Code. **Drake v. Drake**, 555 Pa. 481, 725 A.2d 717 (1999); 23 Pa.C.S.A. § 3502(a) (stating factors which are relevant to equitable division of marital property include: length of marriage; any prior marriage of either party; age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each party; contribution by one party to education, training or increased earning power of other party; opportunity for each party for future acquisitions of capital assets and income; sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits; contribution or dissipation of each party in acquisition, preservation, depreciation or appreciation of marital property, including contribution of party as homemaker; value of property set apart to each party; standard of living parties established during marriage; economic circumstances of each party at time division of property is to become effective; and whether party will be serving as custodian of any dependent minor children). "The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion. We will not reweigh them." **Busse v. Busse**, 921 A.2d 1248, 1260 (Pa.Super. 2007), *appeal denied*, 594 Pa. 693, 934 A.2d 1275 (2007) (quoting **Mercatell v. Mercatell**, 854 A.2d 609, 611 (Pa.Super. 2004)). "We look at the distribution as a whole, in light of a trial court's

overall application of the factors…. In addition we note…the trial court has the authority to divide the award as the equities presented in the particular case may require." ***Busse, supra*** (internal citations and quotation marks omitted). Equitable distribution must be equitable, but it need not be equal. ***Williamson v. Williamson***, 586 A.2d 967, 970 (Pa.Super. 1991).

In his first issue, Husband argues the Master violated Pa.R.C.P. 1920.55-2, requiring a report and recommendation within thirty days of the Master's receipt of the equitable distribution hearing transcript. The initial Hearing occurred on August 26, 2010, but the Master did not issue his Report and Recommendation until April 17, 2013, which was two and on-half years later. Husband contends the delay prejudiced him because many of the property valuations at issue may have changed between the date of the hearing and date of the Master's Report and Recommendation, citing ***Biese v. Biese***, 979 A.2d 892, 897, 899 (Pa.Super. 2009). Husband concludes the court erred in accepting the Master's initial Report and Recommendation of April 17, 2013, and this Court should reverse the trial court's decision and remand this matter for a new equitable distribution hearing. We disagree.

Pennsylvania Rules of Civil Procedure governs challenges to a Master's report as follows:

> **Rule 1920.55-2. Master's Report. Notice. Exceptions. Final Decree**
>
> (a) After conclusion of the hearing, the master shall:
>
> (1) file the record and the report within;

(i) twenty days in uncontested actions or;

(ii) thirty days from the last to occur of the receipt of the transcript by the master or close of the record in contested actions;

(2) immediately serve upon counsel for each party, or, if unrepresented, upon the party, a copy of the report and recommendation and written notice of the right to file exceptions.

(b) Within twenty days of the date of receipt or the date of mailing of the master's report and recommendation, whichever occurs first, any party may file exceptions to the report or any part thereof, to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters.

Pa.R.C.P. 1920.55-2(a)-(b). "[T]his rule requires a party who is dissatisfied with a master's report to file exceptions to the report, or waive any such objections." *Lawson v. Lawson*, 940 A.2d 444, 450 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (quoting *Benson v. Benson*, 515 A.2d 917, 919 (Pa.Super. 1986)). Matters not addressed by exceptions are deemed waived "unless, …leave is granted to file exceptions raising those matters." Pa.R.C.P. 1920.55-2(b). *See also Hayward v. Hayward*, 868 A.2d 554, 561 (Pa.Super. 2005) (holding party must make exception to hearing officer's report to preserve issue for appeal).

As to Husband's first issue, the trial court stated:

> The Master's delay in the filing of his Report and Recommendation is clear, and no explanation is offered by the Master for said delay. However, it is clear from the testimony that this is a very complicated case with contradicting, conflicting, and often times vague testimony. Unfortunately, the delay was not brought to this [c]ourt's attention until the exceptions were initially filed on April 26, 2013. Without the ability to intervene or inquire prior to that date, this [c]ourt does not view rejecting the report in its entirety on the basis of delay alone as an appropriate remedy. As such, this [c]ourt will not disturb the findings and conclusions based on delay alone and the exception is denied.

(Trial Court Opinion at 3). We accept the court's reasoning. Moreover, Husband's reliance on *Biese, supra*, is misplaced because *Biese* did not address Rule 1920.55-2. Rather, in *Biese*, this Court determined the master did not comply with 23 Pa.C.S.A. § 3501(a.1) in finding an increase in the value of marital property. This Court stated 23 Pa.C.S.A. § 3501(a.1) "indicate[s] that if the property in question decreases in value from the time of separation until the time of the Master's hearing, the value at the time of the Master's hearing should be used only if there was an extended period of time between separation and the Master's hearing." *Biese, supra*, 979 A.2d at 899. Husband's reliance on *Biese* is also flawed because *Biese* addressed the passage of time between separation and the Master's hearing, not the delay from the date of the hearing to the date of the Master's Report and Recommendation. Even if we look at the passage of time between appointment of the Master and the first hearing, the Master attributed the delay to Husband's multiple changes in representation and his bankruptcy

proceedings. Thus, we conclude *Biese* is inapposite.

Additionally, we note Rule 1920.55–2(a)(1)(ii) sets forth a thirty-day deadline for the Master to file a report after receipt of the hearing transcript, not a thirty-day timeframe from the date of the hearing. Assuming a violation of the rule in this case, "the court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. 126. Husband does not explain exactly how the value of the marital property changed between the date of the initial Master's hearing and the date of the Master's Report and Recommendation; Husband merely states, "As a result of this significant delay…many of the valuations of property…**may have either increased or decreased in value**. Natural disasters, erosion and other unknown factors **could have and probably did**" diminish property values. (Husband's Brief at 21) (emphasis added). Husband fails to substantiate the suggested consequence of the delay between the hearing and the Master's Report and Recommendation, and his arguments are tenuous at best. *See* Pa.R.C.P. 126. Therefore, Husband's first issue merits no relief.

In his second issue, Husband argues the Master violated Husband's due process rights because the Master did not allow and/or limited Husband's presentation of testimony and evidence during the August 26, 2010 Master's hearing. Husband contends the Master repeatedly assured Husband he would have an opportunity to testify. Husband claims when the

hearing turned to his case, the Master limited Husband's testimony to responses to the Master's and Wife's counsel's respective questions. Husband avers he suffered prejudice because he was unable to present testimony and evidence freely. Husband concludes the court erred in accepting the Master's initial Report and Recommendation of April 17, 2013, and this Court should reverse the trial court's decision and remand this matter for a new equitable distribution hearing. We disagree.

As to Husband's second issue, the trial court stated:

> [Husband] appeared at the initial hearing *pro se*. Throughout the proceeding, the Master advised [Husband] about his right to present evidence and/or testimony, (N.T. 8-26-10 p. 85, 135, 151-152, 156, 158, 159-160, 161, 166-167). A careful review of the record does not support [Husband's] assertion that he was denied the opportunity to present additional testimony and/or evidence. Furthermore [Husband] fails to identify what specific testimony or evidence he was prevented from presenting, as such this exception is denied.

(Trial Court Opinion at 4). The record supports the court's decision. On appeal, Husband continues his general assertions but fails again to specify what testimony or evidence he could not offer. On this basis, we could consider this issue waived. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa.Super. 2014), *appeal denied*, ___ Pa. ___, 110 A.3d 998 (2014) (stating appellate arguments which are not appropriately developed are waived). Accordingly, Husband's second issue merits no relief.

In his final issue, Husband argues the record does not support the Master's findings of ownership and valuation of certain marital property.

- 10 -

Specifically, Husband asserts the Master incorrectly determined the ownership and valuation of real property including the West Wyoming property, the Salem Township property, the Scranton property, the Pocono Summit property, the Jessup property, and fifteen lots used for billboard advertising. Husband insists he testified he did not own the Scranton property, the Pocono Summit property, the Jessup property, and fifteen advertising lots. Husband submits Wife presented no deeds establishing Husband owned these parcels; and the Master based the valuation of these properties on Wife's belief of their estimated value. Husband claims, as to the fifteen advertising lots, Wife did not present evidence of the location of billboards on the lots or any agreement establishing Husband rented the lots for outdoor advertising to support the Master's valuation of these lots. Husband contends the Master incorrectly attributed the value of the Pocono Summit property to Husband, individually, and the value of Husband's stock in McClure Enterprises, Inc. Husband avers that the business valuation of McClure Enterprises, Inc. that he presented included the value of the Pocono Summit property. Husband also submits the Master improperly found the value of the marital residence by averaging the parties' respective appraisals of the property. Husband claims the Master ignored several of the property's adverse conditions when determining the value of the marital residence. Husband asserts the Master improperly failed to grant Husband a credit for Husband's payment of real estate taxes and homeowners'

insurance for the marital residence after the parties separated. Husband avers the Master erred by not crediting Husband the fair rental value of Wife's occupation of the marital residence and closing costs on the sale of the marital residence. Finally, Husband contends the Master erred by finding an Affidavit of Value of $500.00 on reversionary interests of the Erie Lackawanna Railroad in several municipalities as proof of Husband's ownership of undocumented properties. Husband submits that even though Husband's name appears on a quit-claim deed as grantor regarding a portion of some of these undocumented properties, Husband did not own these properties. Husband concludes the court erred in accepting the Master's initial Report and Recommendation of April 17, 2013, and this Court should reverse the trial court's decision and remand this matter for a new equitable distribution hearing. We disagree.

Preliminarily, we observe generally that issues not raised in a Rule 1925 concise statement of errors will be deemed waived. ***Lineberger v. Wyeth***, 894 A.2d 141 (Pa.Super. 2006). The Rule 1925 statement must be specific enough for the trial court to identify and address the issue(s) an appellant wishes to raise on appeal. ***Id.*** "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." ***Id.*** at 148. If a concise statement is too vague, the court may find waiver and disregard any argument. ***Id. See Commonwealth v. Hill***, 609 Pa. 410, 428, 16 A.3d

484, 494 (2011) (stating, "Rule 1925(b) waivers may be raised by the appellate court *sua sponte*"). **See also In re L.M.**, 923 A.2d 505 (Pa.Super. 2007) (applying Rule 1925 waiver standards in family law context).

In determining the value of marital property, the court is free to accept all, part, or none of the evidence as to the true and correct value of the property. **Litmans v. Litmans**, 673 A.2d 382, 387 (Pa.Super. 1996) (citing **Aletto v. Aletto**, 537 A.2d 1383 (Pa.Super. 1988)). "Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented." **Litmans, supra** (quoting **Holland v. Holland**, 588 A.2d 58, 60 (Pa.Super. 1991), *appeal denied*, 528 Pa. 611, 596 A.2d 158 (1991)). **Accord Smith v. Smith**, 653 A.2d 1259, 1267 (Pa.Super. 1995), *appeal denied*, 541 Pa. 641, 663 A.2d 693 (1995) (stating if one party disagrees with other party's valuation, it is objectant's burden to provide court with alternative valuation). A trial court does not abuse its discretion in adopting the only valuation submitted. **Id.** **See also Baker v. Baker**, 861 A.2d 298 (Pa.Super. 2004), *appeal denied*, 591 Pa. 694, 918 A.2d 741 (2007).

Pennsylvania law makes clear:

> An equitable distribution scheme may include an award, to the non-possessing spouse, of one-half of the rental value of the marital residence, when possessed exclusively by the other spouse during the parties' separation. However, we have also upheld deductions from rental value awards for the non-possessing spouse's share of expenses related

- 13 -

to preserving the marital residence (*i.e.*, mortgage, insurance, taxes, maintenance). [T]he award of rental value is within the sound discretion of the trial court.

***Gaydos v. Gaydos***, 693 A.2d 1368, 1377 (Pa.Super. 1997) (*en banc*) (internal citations omitted). This Court has discussed the analysis for awarding a fair rental value credit as follows:

> First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property[.] … Third, the rental value is limited to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse. Generally, in regard to the former marital residence, payments made on behalf of the dispossessed spouse will be one-half of the expenses including debt service on the property. This is so because equity places a presumption upon the dispossessed spouse of responsibility for expenses to the extent of…his ownership interest which is generally one-half.

***Lee v. Lee***, 978 A.2d 380, 385-86 (Pa.Super. 2009) (quoting ***Trembach v. Trembach***, 615 A.2d 33, 37 (Pa.Super. 1992)).

Nevertheless, a fair rental value credit is not mandatory. ***Middleton v. Middleton***, 812 A.2d 1241, 1248 (Pa.Super. 2002) (*en banc*) (holding court's failure to credit husband for one-half fair rental value of marital residence was not abuse of discretion even though husband voluntarily and generously paid mortgages and expenses of marital home in excess of court

ordered amount for period of ten years; trial court's ultimate equitable distribution award reflected consideration of factors under Section 3502(a) and was supported by record; trial court's overall distribution scheme of 50/50 division of marital assets was equitable); *Schneeman v. Schneeman*, 615 A.2d 1369, 1377 (Pa.Super. 1992) (explaining while each party is entitled to equitable share of marital property, including fair rental value of marital residence, trial court need not compute that equitable share as credit to non-possessory spouse, as long as total distribution scheme is equitable).

Instantly, in his court-ordered Rule 1925(b) statement, Husband failed to include any issue regarding ownership and valuation of the Jessup property, a credit to Husband for closing costs on the sale of the marital residence, and Husband's ownership of reversionary interests of the Erie Lackawanna Railroad property. Likewise, Husband failed to include these issues in his exceptions to the Report and Recommendation of April 17, 2013, or his exceptions to the Report and Recommendation Following Remand of March 17, 2015. *See* Rule 1920.55-2(b). Accordingly, Husband waived these claims for our review. Thus, we will give them no further attention.

With respect to Husband's remaining claims in his third issue, the court reasoned:

> At the initial Master's Hearing conducted on August 26, 2010, [Wife] testified she obtained two appraisals of the

marital home by John Foley, a state certified real estate appraiser. [In 2005 and 2008,] Mr. Foley appraised the marital home and the surrounding land at $500.000.00. A letter from John Foley & Associates dated August 24, 2010 was introduced at the hearing. The letter reaffirms Mr. Foley's opinion regarding the value of the property as provided in his two earlier appraisals. A second appraisal from J. Conrad Bosley was introduced by [Husband], appraising the marital home at $335,000.00. Both [Mr. Foley's letter and Mr. Bosley's appraisal] are included in the list of the Master's exhibits filed on April 24, 2013.[1] The Master determined the value of the marital home and the land to be $427,500.00. He arrived at this figure by taking the average of the [parties' respective] appraisals.

[1] One issue affecting the value of the home is whether a part of the in-ground pool and/or deck are located on [Husband]'s mothers property. Additionally, the testimony revealed that [Husband]'s mother conveyed the property on which the marital home is located to [Husband] without [Wife]'s knowledge in 1991, shortly after the parties were married.

In determining value, the Superior Court has ruled "The trial [c]ourt must exercise its discretion and rely on the estimates, inventories, record of purchase prices, [and] appraisals submitted by the parties.["] *Verholek v. Verholek*, 741 A.[2d] 792, 796 (Pa.Super. 1999) [(*en banc*)]. Continuing, the *Verholek* Court stated "the court is free to accept all, none[,] or portions of the testimony regarding the true and correct value of…property." *Id.* [] Finally, "the court may reject evidence offered by both parties in favor of its own valuation method." *Id.* In its discretion, a trial court may take the average of appraisals submitted by the parties. *See Aletto v. Aletto*, 537 A.2d 1383, 1389 (Pa.Super. 1988).

In his…claim regarding the Master's valuation of the marital [residence], [Husband] alleges the Master relied on "stale" property values in determining equitable distribution. The above-reference[d] letter submitted by [Wife] from John Foley & Associates is dated August 24, 2010. In this letter, Mr. Foley stated that in his opinion,

his two earlier appraisals of the marital home are still valid as of August 2010. Notably, the appraisal submitted by [Husband] of J. Conrad Bosley is from 2007. In addition to the appraisals, the parties offered testimony about circumstances that affect the property's value. [Husband] failed to provide any testimony and/or evidence to establish that any of the appraisals are stale or no longer valid. In considering all of the testimony and evidence presented, the Master was free to accept or reject the appraisals and/or corresponding testimony. This [c]ourt will not disturb the Master's findings and as such the exceptions related to the value of the marital home are denied.

* * *

The next...allegations of error concern the "West Wyoming property". ...

* * *

[Husband] testified he owns 1.3 acres of land in West Wyoming, PA. Without producing any documentation relative to the property, [Husband] testified that the real estate taxes are $100.00 a year and that he paid the taxes himself. [Wife] testified she was familiar with the West Wyoming property and that she and [Husband] had previous conversations about the property. She testified the tax bill would come in and "they'd be paid you know, it wasn't that we were looking to sell it...." [Wife] offered an opinion regarding the value of the property at $100,000.00. She testified that she calculated the value of real estate by considering "what properties around it are worth." In addition, she relied on her knowledge in general of "what properties have been selling for" and how they had been increasing in value. Finally, she testified she did some research regarding the value of some of the properties. The Master accepted her opinion as to the West Wyoming property and included it in his conclusions. ...

As stated above, the Master must consider the evidence and documentation presented at the hearing. As such, a Master is afforded discretion in determining which evidence

to accept and which evidence to reject. ***See Verholek***[, ***supra*** at] 796. Value may be based on "estimates, inventories, records of purchase prices, and appraisals submitted by [the] parties." [***Id.***] As such this [c]ourt will not disturb the findings and conclusions of the [M]aster and these exceptions are denied.

\* \* \*

The next…allegations of error concern a property in Salem Township. …

At [the Master's initial hearing], [Husband] testified he owns eighteen (18) acres of land in Salem Township. … [Husband] testified he pays the taxes, but he did not provide any documentation regarding the tax bills. He guessed the property taxes to be "a couple hundred dollars a year." He said that he gets the money to pay the taxes from "wherever," including borrowing money from his mother. He did not have any documents to establish any borrowed sums of money. [Husband] testified he sold an easement on the property in 2004 for $16,000.00. He could not recall what he did with the money, either keeping it for himself or using it to pay household bills and/or tuition. [Wife] testified the Salem Township property is worth $127,000.00. She said she was aware that he owned the property and that taxes were being paid on the property. She testified [Husband] received $16,700 for the easement and she did not receive any of the money. Neither [Husband] nor [Wife] introduced any exhibits relating to the value of the Salem Township [p]roperty.

As stated above, the Master is free to accept "all, none, or portions of the testimony regarding the true and correct value of property." ***Verholek***[, ***supra***] at 796. The Master considered and accepted [Wife]'s valuation of $127,000.00, as it was the only evidence of value offered. The Master also disregarded [Husband's] testimony about borrowing money from his mother to pay the property taxes. Both determinations are within the Master's sound discretion and will not be disturbed by this [c]ourt, as such these exceptions are denied.

[Husband] next alleges the Master erred "in determining that the Pocono Summit property is valued as marital property being retained by [Husband], while also valuing said asset as part of [Husband]'s interest in McClure Enterprises." … [Wife] testified about land owned by [Husband] in Pocono Summit, Monroe County. She estimated the value of that property to be $45,000.00. The Master included this property in the valuation of [Husband]'s interest in McClure Enterprises.

As stated above, the Master was free to accept "all[, none, or portions] of the testimony" regarding the value of the Pocono Summit [p]roperty. [*See Verholek, supra* at 796.] In addition he was free to base his value determination on testimony, evidence appraisals, *etc*. The Master clearly accepted the testimony of [Wife] as credible, as such the exception is denied.[1]

Next, [Husband] alleges the Master erred "in determining that [Husband] has interest[s] in at least 15 lots in Monroe, Luzerne and Lackawanna counties." In addition, he alleges the Master erred "in determining [Husband] receives rental income from billboards on fifteen (15) lots" in "determining that 'outdoor advertising sites' were owned

---

[1] In the Report and Recommendation of April 17, 2013, the Master notes Husband has an eight percent (8%) interest in McClure Enterprises; Husband's interest in McClure Enterprises is valued at $17,297.80. *See* Report and Recommendation, April 17, 2013, at 4. McClure Enterprises, Inc. includes the Pocono Summit property. *Id.* at 9. The Master's equitable distribution summary also attributes the Pocono Summit property value in full ($45,000.00) personally to Husband but also includes it as part of the value of Husband's interest in McClure Enterprises. *Id.* at 17. In essence, the Master assigns to Husband an additional eight percent (8%) of the Pocono Summit property value, which amounts to $3,600.00. The total amount of the marital property subject to equitable distribution is $1,014,750.80. *Id.* Considering the distribution scheme as a whole in light of the overall value of the marital estate, we conclude the Master's misapplication of an additional $3,600.00 to Husband's share of the marital property is *de minimis*, as it represents only about 0.0035 of the entire marital estate, and it is unworthy of further proceedings*. See Busse, supra*; *Williamson, supra*.

by [Husband]" and "in attributing a value for '[o]utdoor [a]dvertising sites' as marital property subject to equitable [distribution."]

A great deal of testimony was offered at both the initial hearing and the remand [hearing], which was held on October 8, 2014. In the initial hearing, [Wife] testified [Husband] owned various parcels of land on which billboards were located. She based her estimation in part on conversations she had with [Husband]. The billboard rentals generated income, in the form of checks made payable to [Husband]. She estimated there to be fifteen (15) such properties. The rental income checks came in on a regular basis and were used to the support the family. A deed evidencing a billboard rental agreement was admitted into evidence as [Wife]'s Exhibit # 3 at the remand hearing.

On remand, [Husband] testified he did not own fifteen (15) outdoor advertising sites. He was asked about the contract that had been produced by [Wife] that had been entered into by him and Patrick Outdoor Media. He denied receiving any funds from that lease and testified that the contract no longer exists. …

Initially, the Master valued ownership in these rental agreements at $72,000.00. Upon remand, the Master did not disturb his original findings and conclusions. In evaluating the testimony of both [Wife] and [Husband], he found [Wife]'s testimony credible.

As stated above, a Master may accept "all, none, or portions of the testimony regarding a true and correct value of the property." **Verholek**[, **supra** at] 796. In this instance, the Master, based on his credibility determinations and case law, came to the conclusion [Husband] owns and benefits from the billboard leases, as such these exceptions are denied.

Next, [Husband] alleges the Master erred in "attributing a value for land in the Green Ridge section of Scranton, Pennsylvania as marital property subject to equitable distribution." At the [initial Master's] hearing, [Wife] testified [Husband] sold a piece of property that he owned

which was located in the Green Ridge area of Scranton. [Wife] had read about the transaction in the newspaper. [Wife] valued the property at $65,000.00.[2]

The Master accepted [Wife]'s testimony as credible and included the property in his findings of fact. This determination by the Master is appropriate based on the evidence presented. It is within his sound discretion. **_See Verholek[, supra]_**. As such this exception is denied.

\* \* \*

Next, [Husband] alleges the Master erred "in failing to take in to consideration that [Husband] paid the real estate taxes and insurance for the property valued as marital property and in failing to attribute any responsibility for said expenses to [Wife]." At the [initial Master's] hearing, [Husband] testified he is under a court order to pay $614.00 per month in child support. In addition, he is court-ordered to pay one-half of the annual tuition at Wyoming Seminary. He testified he doesn't actually pay the tuition, either his mother or brother-in-law pay it for him. [Wife] testified she is the primary caretaker for the minor children and she has been since the separation. She testified the only contribution to household and childrearing expenses she receives from [Husband] is the court-ordered child support. She further testified a significant portion of her child support check is used to pay an outstanding [D]iscover bill, pursuant to an agreement between the parties. Due to the conflicting testimony, the Master made a credibility determination [and] chose to believe [Wife]'s testimony. The Master is tasked with achieving equitable justice. In light of the above testimony and evidence presented, as well as applicable law, this [c]ourt will not disturb the Master's findings. As such this exception is denied.

Next, [Husband] alleges the Master erred "in failing to attribute a fair market rental value on [Wife]'s exclusive

_____

[2] Testimony that Husband sold the property presupposes his ownership of the property.

- 21 -

use of the marital residence." The matter of fair market rental value, however, is within the trial court's discretion and "is not mandatory." ***Middleton v. Middleton***, 812 A.2d 1241, 1248 (Pa.Super. 2002) [(*en banc*)] (citations omitted). For reasons discussed in evaluating [Husband's claim regarding payment of real estate taxes and insurance on the marital property], this [c]ourt will not disturb the findings and conclusions of the Master. As such this exception is denied.

(Trial Court Opinion at 4-6, 9-14, 18-19) (some internal footnotes and all citations to record omitted). The record supports the court's decision. Husband's challenges to the Master's findings of credibility and consideration of evidence merit no relief. ***See Childress, supra***; ***Litmans, supra***. Likewise, Husband's objections to the specific items in the overall distribution of marital property fail to demonstrate the distribution is inequitable. ***See Busse, supra***. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2016