J-A29011-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: E.A.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.P., MOTHER | : | No. 584 WDA 2014 |

Appeal from the Order March 18, 2014,
Court of Common Pleas, Allegheny County,
Orphans' Court at No. TPR 158 of 2012

---

| | | |
|---|---|---|
| IN RE: M.L.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.P., MOTHER | : | No. 585 WDA 2014 |

Appeal from the Order March 18, 2014,
Court of Common Pleas, Allegheny County,
Orphans' Court at No. TPR 153 of 2012

---

| | | |
|---|---|---|
| IN RE: O.D.J. A/K/A O.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.P., MOTHER | : | No. 586 WDA 2014 |

Appeal from the Order entered March 18, 2014,
Court of Common Pleas, Allegheny County,
Orphans' Court at No. TPR 152 of 2012

BEFORE:  DONOHUE, ALLEN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED NOVEMBER 12, 2014**

*Retired Senior Judge assigned to the Superior Court.

L.P. ("Mother") appeals from the orders of court terminating her parental rights to E.J., M.J., and O.J. (collectively, "Children"). Following our thorough review, we affirm.

The facts underlying this appeal may be briefly summarized as follows. Mother is the maternal aunt of the Children. She adopted them in December 2008, when the Children were five, four and three years old. In September 2011, the Allegheny County Office of Children, Youth and Families ("CYF") became involved with the family upon learning that E.J. presented at the hospital with a laceration on his head that required two staples to close. An investigation ensued, which revealed physical abuse by Mother and her son, S.P., against the Children.[1] The Children were removed from Mother's custody, adjudicated dependent, and placed in a foster home. As a result of CYF's investigation, Mother faced criminal charges.

In April 2012, prior to the disposition of her criminal charges, Mother began working to meet various goals established by CYF, including parenting classes, anger management classes and therapy. In May 2012, she pled guilty to harassment and was sentenced to 90 days of probation, and ordered to have no contact with the Children until she completed probation.[2] In November 2012, 14 months after their removal from Mother, CYF

---

[1] Mother beat the Children with her hand, a belt or electric cords. S.P. hit the Children with his hands or drumsticks.

[2] CYF also required Mother to attend twice-monthly supervised visitation with the Children after the no-contact order was lifted.

petitioned for the termination of Mother's parental rights to the Children. Following a hearing that occurred in March 2014, the trial court granted CYF's petitions, finding termination appropriate under 23 Pa.C.S.A. § 2511(a)(2),(5),(8), and (b). This timely appeal follows.

Mother presents the following four issues for our review:

1. Whether the trial court abused its discretion or erred as a matter of law in finding that [CYF] proved by clear and convincing evidence that they provided reasonable services to Mother to reunify her with her Children?

2. Whether the trial court abused its discretion or erred as a matter of law in finding that the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by Mother?

3. Whether the trial court abused its discretion or erred as a matter of law in finding that Mother was not likely to remedy the conditions which led to the removal of the Children within a reasonable period of time?

4. Whether the trial court abused its discretion or erred as a matter of law in finding that the termination of parental rights would best serve the developmental, physical, emotional needs and welfare of the Children?

Appellant's Brief at 1.

The first issue presented by Mother challenges the trial court's determination that CYF fulfilled its duty to provide reasonable services to assist in reuniting Mother with the Children. Mother, however, did not include this issue in her statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925(b). It is well established that any issues not raised in a Pa.R.A.P. 1925(b) statement are waived for purposes of appeal. *In re K.C.*, 903 A.2d 12, 16 (Pa. Super. 2006); *see also* Pa.R.A.P. 1925(b)(4)(vii). Thus, Mother has waived this issue.

In her remaining issues, Mother challenges the trial court's findings that the requirements for termination of parental rights pursuant to Sections 2511(a)(2),(5),(8) and (b) of the Adoption Act were met by clear and convincing evidence. Appellant's Brief at 13-23.

Our review of a decree terminating parental rights is highly deferential to the trial court. As this Court has stated:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. … The trial court is free to make all credibility determinations, and may believe all, part, or none of the evidence presented. If the findings of the trial court are supported by competent evidence, we will affirm even if the record could also support the opposite result.

*In re T.M.T.*, 64 A.3d 1119, 1124 (Pa. Super. 2013) (citations omitted). Furthermore, where the trial court has found that termination is appropriate under more than one sub-section of Section 2511(a), "this court need only

- 4 -

agree with the trial court's decision as to any one subsection in order to affirm the termination of parental rights." ***Id.*** at 1125.

Section 2511 of the Adoption Act governs termination of parental rights. Under Section 2511, the trial court must engage in a bifurcated process. ***In re C.L.G.***, 956 A.2d 999, 1004 (Pa. Super. 2008). The initial focus is on the conduct of the parent, and the burden of proof is on the petitioner to establish by clear and convincing evidence the existence of grounds for termination under Section 2511(a). ***Id.*** If the trial court finds that termination is warranted under Section 2511(a), it must then turn to Section 2511(b), and determine if termination of the parent's rights is in the child's best interest. ***Id.***

We begin with Mother's challenges to the trial court's determinations as to Sections 2511(a)(2),(5) and (8). As stated above, although the trial court found termination appropriate as to three sub-sections of Section 2511(a), we need only agree as to any one of these sub-sections to uphold the trial court's determination. ***T.M.T.***, 64 A.3d at 1125. With this in mind, we focus on Section 2511(a)(2), which provides as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental

well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2). This Court has previously addressed termination under this provision, stating,

> Parental rights may be terminated under Section 2511(a)(2) if three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. ***In re Geiger***, 459 Pa. 636, 331 A.2d 172, 174 (1975).

***In re E.A.P.***, 944 A.2d 79, 82 (Pa. Super. 2008).

The trial court concluded that repeated and continued abuse was established and that the conditions that caused the abuse "have not and will not be remedied." Trial Court Opinion, 5/23/14, at 9. There is evidence of record to support this conclusion. Dr. Patricia Pepe, a licensed clinical psychologist who interviewed Mother and the Children on three occasions between 2011 and 2013, testified that at first, Mother refused to admit that she would hit the Children, but eventually relented, admitting that she did strike the Children. N.T., 3/14/14, at 28. However, Mother considered her actions to be an appropriate form of discipline. ***Id.*** Furthermore, Dr. Pepe reported that at first, Mother flatly refused to acknowledge that S.P. hit or otherwise abused the Children, characterizing the Children as "cryers" who S.P. was trying to toughen up with wrestling and roughhousing. ***Id.*** at 30.

Mother adhered to this belief even when confronted with the Children's statements describing how S.P. abused them, declaring that the Children were lying. *Id.* at 31. Mother eventually admitted that she knew S.P. was hitting the Children, but did not think it was a problem. *Id.* at 54.[3]

After anger management classes and individual therapy, Dr. Pepe noted a change in Mother's perspective, as Mother would acknowledge that it was not appropriate to physically discipline children. *Id.* at 38. However, further psychological testing led Dr. Pepe to conclude that "there was not the level of psychological rehabilitation necessary" to ensure that Mother would not repeat the abuse. *Id.* at 42. Dr. Pepe opined that Mother has "significant unconscious or deeply-characterological [*sic*] issues" that have not changed. *Id.* at 55. This testimony supports the trial court's determination that the abuse, which led to the Children's removal, has not and cannot be remedied. We therefore cannot disturb the trial court's determination.[4]

---

[3] S.P. initially denied harming the Children, but eventually admitted that he would hit them on the legs so that he would not leave a mark. N.T., 3/14/14, at 52.

[4] The only argument Mother sets forth in support of her challenge to the trial court's determination as to Section 2511(a)(2) is the statement that "[t]he record is replete with testimony that Mother was ready, willing and able to remedy the conditions which led to the [C]hildren being removed from her home." Appellant's Brief at 14. This is a woefully underdeveloped argument, and it is not this Court's function to develop arguments for an appellant. *In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013). Nonetheless, the essence of Mother's argument is that there was other evidence that would have supported an alternate conclusion, one in her favor. The trial

Mother next challenges the trial court's determination as to Section 2511(b), which provides as follows:

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b). When considering the needs and welfare of a child pursuant to the Section 2511(b) inquiry, the trial court must consider whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

---

court credited the testimony of Dr. Pepe and relied upon it in reaching its decision, and we may not disturb this credibility determination. *See Busse v. Busse*, 921 A.2d 1248, 1256 (Pa. Super. 2007) (holding that appellate courts do not reverse credibility determinations on appeal). Accordingly, Mother's argument, even if it were properly developed, would be unavailing.

The trial court concluded that termination would best serve the needs and welfare of the Children because they have suffered a tremendous amount of trauma in Mother's care; Mother has not demonstrated the ability to change her capacity to inflict this trauma; and the Children had been making progress in recovering from the trauma since being out of Mother's care. Trial Court Opinion, 5/23/14, at 11-12. The trial court also found that although there is a bond between Mother and the Children, the Children are still apprehensive about returning to her care. *Id.* at 12. It further found that the Children have a loving appropriate relationship with their current foster mother, who meets their needs and to whom they look for support and encouragement. *Id.* at 12-13.

Again we must conclude that the trial court's determinations are supported by the evidence of record. Dr. Pepe opined that while the Children have a bond with Mother, it is not a "primary attachment;" that they still exhibit fear in Mother's presence; and that this fear with Mother "continues to impact their perceptions" of Mother. N.T., 3/14/14, at 58-59. It was also Dr. Pepe's opinion that the bond between Mother and the Children is not "necessary and basic" such that they would be harmed if it were severed. *Id.* at 57-59. She further opined that termination would best suit the Children's needs and welfare, because it would provide permanency that would allow the boys to have an "understanding of what their futures would be." *Id.* at 56-57. Similarly, Maria DiBuono, the CYF caseworker

assigned to this family, testified that termination would best serve the Children's needs and welfare because it would allow the Children to have a sense of permanence and certainty about their futures. *Id.* at 160. Louisa Rylott, a caseworker at The Children's Institute at Project Star, the entity that facilitated the Children's placements in foster care, testified that she supervised the visitation between the Children and Mother since August of 2013. *Id.* at 173-74. She also observed interactions between the Children and their foster mother, who is a pre-adoptive resource. *Id.* at 150, 180. Ms. Rylott testified that the foster mother meets the Children's physical and emotional needs.[5] *Id.* at 180. Dr. Pepe also observed the interactions between the Children and the foster mother and concluded that the foster mother was appropriately and successfully addressing the Children's issues. *Id.* at 49.

All of this evidence supports the trial court's conclusion, and so we may not disturb it. In support of argument on this point, Mother points to her testimony which she characterizes as "replete with her love, concern, and understanding of the developmental and special needs of the [Children]." Appellant's Brief at 22. Mother's testimony of her love for the Children does not negate the evidence, as recounted above, that supports

---

[5] We acknowledge the testimony that at one point, the Children reported to Dr. Pepe that the foster mother threw O.J. off of a bed and struck him with a belt; however, following an investigation, these allegations were determined to be unfounded. N.T., 3/14/14, at 50-51, 156.

the trial court's conclusion that termination best serves the Children's needs and welfare.

Having found no abuse of discretion or error of law by the trial court, we affirm.

Orders affirmed.

Allen, J. joins the Memorandum.

Strassburger, J. files a Concurring Statement.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2014