J-A27036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN T. ERB, | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ANN ERB, | : | |
| | : | |
| Appellee | : | No. 1271 EDA 2019 |

Appeal from the Order Entered March 29, 2019
in the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CF-2016-05559

BEFORE:   BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 12, 2020**

John T. Erb (Husband) appeals from the order entered March 29, 2019, which granted his divorce from Ann Erb (Wife) and ordered the equitable distribution of the parties' assets.  We affirm.

Husband and Wife were married on September 12, 1998, and on June 23, 2016,[1] Husband filed a complaint in divorce, where he requested the equitable distribution of the marital property.  Wife filed an answer, where she requested, *inter alia*, equitable distribution, alimony *pendente lite* (APL), and alimony. On April 10, 2018, the parties appeared for a hearing before Special Master Steven N. Goudsouzian, Esquire (the Master).

_____

[1] At a hearing on February 17, 2017, Special Master Jeremy Clark determined that June 23, 2016, is also the parties' date of separation.

* Retired Senior Judge assigned to the Superior Court.

At the hearing, both Husband and Wife testified regarding their marriage, assets, and earning capacities. Of note, the primary issues in dispute were the disposition of the marital home and the parties' joint money market accounts.[2]

Husband, who at the time of the hearing was 59 years old and in good health, is a traveling salesperson and holds a Bachelor of Science degree from Kutztown State University. Prior to 2017, Husband earned over $200,000 per year. In 2017, he earned $192,074.34, which was "down approximately 22 percent" from 2016. N.T., 4/10/2018, at 10. His earnings are based on both salary and commission. Husband testified that he was concerned that his 2018 salary would also decrease, which could put his job in jeopardy. *Id*. at 11-12. Husband also testified that since the parties' separation, he has "chosen to pay [his] own [business] expenses," instead of getting reimbursed by his employer for his travel.[3] Since July 11, 2016, Husband has incurred $74,461 in business expenses that will never be reimbursed. *Id*. at 37.

Wife, who was 53 years old at the time of the hearing, has a high school education, and has generally been a homemaker during the course of the

---

[2] The parties maintained a New Tripoli money market account valued at $236,988 and a joint Wells Fargo account valued at $133,149.80. In addition to these accounts, the parties also maintained their own Wells Fargo accounts for expenses.

[3] Husband submitted expense reports and was reimbursed by his employer prior to that time. It was Husband's position that he no longer submitted reports because his employer changed the process, which eliminated Husband's ability to use a specific travel agent whom he had always used.

marriage. Prior to the marriage, Wife had a minimum-wage job, and she held several minimum-wage jobs throughout the marriage. After Husband indicated he wanted a divorce, Wife went back to school to become a medical assistant. She has been employed as a medical assistant since January 2017, and she earns approximately $13 per hour, or $24,000 per year.

With respect to the marital home, Husband purchased a home in 1996, prior to the parties' marriage, for approximately $191,000. The home was placed in the names of both Husband and Wife in 2006, and the mortgage on the home was paid off in 2008. Since the parties' separation, both parties have continued to live there and Husband has paid all expenses for the marital home. Wife represented that she has no interest in remaining in the marital home. *Id*. at 7, 88. Husband indicated that if he were awarded the marital home, he would consider selling it. *Id*. The Master found that the marital home had a net value of $300,115. Master's Report, 6/8/2018, at 9.

Husband testified that post-separation, Wife was taking money from the parties' joint accounts and transferring it to her own account. N.T., 4/10/2018, at 22-28. According to Husband, he paid all expenses related to the marital home since the parties' separation, so he believed those transfers were not appropriate.

On June 8, 2018, the Master filed a report, where he provided, in relevant part, that "[t]o achieve economic justice from" the assets available, Husband would keep the marital home as well as $33,150 from the parties'

joint Wells Fargo account. Master's Report, 6/8/2018, at 10. The Master awarded Wife the remaining $100,000 from the Wells Fargo account, and the entire value, $236,988, of the parties' New Tripoli money market account. Wife also received 50% of the marital component of Husband's 401(k) and 100% of her IRA, which was worth approximately $13,000. According to the Master, he utilized this distribution scheme because Husband "indicated that he is interested in keeping" the marital home, and Wife was concerned about her need for liquid funds. *Id*. at 9. In addition, the Master awarded Wife alimony through July 1, 2022. Specifically, the Master took into account the length of the marriage, Husband's superior earning capacity, even though the nature of his future earning may not be guaranteed. In considering the length of the alimony obligation, the Master withheld alimony from Wife so long as Wife was residing in the marital home, and the Master took into account Wife's "post separation/anticipation of separation withdrawals." *Id*. at 16.

Husband filed exceptions to the Master's Report, claiming, in relevant part, that the Master 1) "erred by failing to credit Husband for the payments he made post-separation and in anticipation of separation on Wife's behalf and/or for Wife's benefit[;]" 2) "erred by failing to credit Husband for the withdrawals Wife took for her sole use and benefit from the joint marital bank account[;]" 3) erred in failing to divide assets equally between Husband and Wife; and 4) erred by failing to divide the marital home equally between

Husband and Wife. Husband's Exceptions to Master's Report, 7/18/2018, at ¶ 3.

The trial court heard argument on Husband's exceptions on November 6, 2018, and on January 17, 2019, the trial court entered an opinion and order overruling Husband's exceptions. A divorce decree was entered on March 29, 2019, and on April 25, 2019, Husband filed a notice of appeal challenging the trial court's order overruling his exceptions. Both Husband and the trial court complied with Pa.R.A.P. 1925.

On appeal, Husband presents the following issues for our review.

> I.    Whether the trial court erred and/or abused its discretion by affirming the Master's failure to credit [Husband] for the payments he made on [Wife's] behalf and/or for [Wife's] benefit in addition to Wife's unilateral withdrawals from joint bank accounts both post-separation and in anticipation of separation?
>
> II.   Whether the trial court erred and/or abused its discretion by affirming the Master's failure to divide all of the marital liquid financial accounts evenly between [Husband] and [Wife] and instead awarding [Wife] the majority of those accounts?
>
> III.  Whether the trial court erred and/or abused its discretion by affirming the Master's failure to take into consideration the actual dollar amount realized from the sale of the marital residence has the potential to be less than the assigned value of the residence as well as failing to divide the equity in the marital residence between [Husband] and [Wife] evenly in the distribution scheme?

Husband's Brief at 8 (unnecessary capitalization omitted).

We consider Husband's issues mindful of the following.

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the

propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Reber v. Reiss*, 42 A.3d 1131, 1134 (Pa. Super. 2012) (quoting *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009)).

In fashioning an equitable distribution award, the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S.[] § 3502…. These factors require the trial court to consider the relative economic positions of the parties and the nature of the parties' relationship. The section 3502 factors are not a simple formula, rather they serve as a guideline for consideration. The facts of a particular case mandate how the section 3502 factors will be applied.

*Gates v. Gates*, 933 A.2d 102, 105 (Pa. Super. 2007). The factors enumerated in section 3502 are as follows.

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

- 6 -

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

We do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S. § 3502(a)] factors…. If we fail to find an abuse of discretion, the [o]rder must stand.

*Lee v. Lee*, 978 A.2d 380, 383 (Pa. Super. 2009) (quoting *Trembach v. Trembach*, 615 A.2d 33, 36 (Pa. Super. 1992)).

In addition, although Husband does not specifically challenge the Master's award of alimony to Wife, because it was part of the overall distribution scheme, we set forth those factors as well.[4] ***See Braderman v. Braderman***, 488 A.2d 613, 621 (Pa. Super. 1985) ("In determining the amount of alimony the court properly relied, *inter alia*, on the property distributed to both parties under the equitable distribution scheme."); ***see also Nemoto v. Nemoto***, 620 A.2d 1216, 1221 n.6 (Pa. Super. 1993) ("[W]e cannot view an order granting alimony in isolation from a trial court's equitable distribution scheme because the relative assets of the parties is one factor which must be considered by the lower court in the alimony context."). The alimony factors are:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

---

[4] "An award of alimony may be reversed where there is an apparent abuse of discretion or there is insufficient evidence to support the award." ***Brubaker v. Brubaker***, 201 A.3d 180, 190 (Pa. Super. 2018).

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S § 3701(b).

Husband first contends the trial court erred in overruling his exception to the Master's Report where the Master failed to credit him for $76,000 that Wife unilaterally withdrew from the parties' joint bank account post-

separation.[5] Husband's Brief at 14. According to Husband, the Master failed to account adequately for the "precarious nature of [his] employment as well as [his] fluctuating income." *Id*.

Here, the trial court recognized that Wife resided in the marital home, with Husband paying those expenses, for the two years since the parties' date of separation. *See* Trial Court Opinion, 1/17/2019, at 4. The trial court adopted the Master's rationale for how it accounted for these anticipation-of-separation and post-separation payments.

> Husband shall be responsible to [W]ife for a total of 6 years of alimony. However, [H]usband is entitled to credit from the date of separation moving forward. Accordingly, his alimony obligation will end on July 1, 2022 (6 years from the date of separation). While [W]ife remains in the marital home, [H]usband shall be ordered and directed to continue to pay all of the outstanding invoices and expenses. This obligation shall be modifiable. However, while [W]ife remains in the marital home, [H]usband shall have no obligation to make any alimony payments to [W]ife. Rather, the parties will continue to live, as they have done so in the past, until [W]ife physically moves out of the marital home. After [W]ife moves out of the marital home, [H]usband's alimony obligation will be in accordance with Northampton [C]ounty Domestic Relation guidelines.
>
> The undersigned notes that [W]ife made a series of post separation/anticipation of separation withdrawals and these actions have been taken into account. No adjustment shall be made. Accordingly from a practical standpoint, [W]ife will be receiving an award of greater than six years.

---

[5] Husband references pages 159 and 160 of the reproduced record, which corresponds to pages 32 and 33 of the notes of testimony from the April 10, 2018 hearing. Our review of both does not reveal this number being mentioned by either Husband or Wife. *See* Reproduced Record, 159-60; N.T., 4/10/2018, at 32-33. In his post-hearing letter brief to the trial court, Husband contended the expenditures totaled $45,476. Husband's Post-Hearing Letter Brief, 5/14/2018, at 2; Trial Court Opinion, 1/17/2019, at 4.

Trial Court Opinion, 1/17/2019, at 6 (quoting Master's Report, 6/8/2018, at 16).

Here, the parties were married for a substantial period of time, and Husband was the sole provider for most of the parties' marriage. Husband was essentially credited two years of alimony payments in exchange for Wife's withdrawals. While Husband emphasizes his allegedly precarious employment situation, the trial court was required to consider multiple factors in reaching this decision, including the fact that Wife did not receive alimony *pendente lite* during the parties' separation. Upon review, we discern no abuse of discretion in the trial court's decision and conclude Husband is not entitled to relief on this claim.

Husband next contends the trial court erred in overruling his exceptions to the Master's Report by failing to conduct "a specific review of each of the applicable equitable distribution factors." Husband's Brief at 15. Again, Husband references what he considers his "precarious" employment situation and the financial consequences of either selling or taking out a loan against the equity of the marital home. *Id*. at 16.

Although the Master did not do a factor-by-factor analysis,[6] it is clear that he did examine all of the relevant statutory factors in reaching his

---

[6] "While the list of factors in Section 3502 serves as a guideline for consideration, the list is neither exhaustive nor specific as to the weight to be given the various factors. Accordingly, the court has flexibility of method and

- 11 -

conclusions. *See* Master's Report, 6/8/2018, at 2-12. Additionally, the trial court considered the Master's Report, as well as the statutory factors, in overruling Husband's exceptions. *See* Trial Court Opinion, 1/17/2019, at 8-9. Husband is in reality asking us to reweigh these factors. That we will not do. *Busse v. Busse*, 921 A.2d 1248, 1260 (Pa. Super. 2007) ("The weight to be given to the[] statutory factors depends on the facts of each case and is within the court's discretion. We will not reweigh them.") (internal citations and quotation marks omitted). Thus, we conclude Husband is not entitled to relief.

Finally, Husband argues that the trial court should have divided the equity of the marital home between Husband and Wife evenly. Husband's Brief at 17. It is Husband's position that the trial court has placed "an unfair burden" on him by leaving "uncertainty with respect to the value" of the marital home. *Id*.

Here, Husband expressed interest in remaining in the marital home, while Wife did not. The trial court considered Husband's contention that there is a possibility "that the marital residence would sell for less than the assigned value," but concluded it was not a sufficient basis to disturb the Master's recommendation because Husband did not present evidence in support of this contention. Trial Court Opinion, 1/17/2019, at 10. As the trial court pointed out, "under the Master's proposed distribution, Husband gets the benefit of

---

concomitantly assumes responsibility in rendering its decisions." *Hess v. Hess*, 212 A.3d 520, 524 (Pa. Super. 2019) (internal citations and quotation marks omitted).

choosing between keeping the residence and keeping the net proceeds from selling it." *Id*. In fact, even if Husband sells the marital home for more than the appraised value, he gets to keep all proceeds. *Id*. Again, viewing the equitable distribution scheme as a whole, we conclude the trial court did not abuse its discretion in overruling Husband's exceptions.

Having concluded that Husband has presented this Court with no basis for relief, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/20