J-S07004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RAMONA JORDAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD JORDAN | : | |
| | : | |
| Appellant | : | No. 827 WDA 2020 |

Appeal from the Order Entered August 25, 2020
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  275 of 2018 D

BEFORE:  SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED: MAY 11, 2021**

Richard Jordan ("Husband") appeals from the order entered August 25, 2020, granting a decree in divorce, granting in part and denying in part Husband's exceptions to the Master's Findings of Fact, Recommendations, and Report, and equitably distributing the marital property of Husband and Appellee, Ramona Jordan ("Wife").[1]  After careful review, we affirm.

---

[1]  A divorce decree was entered on August 25, 2020.  Husband filed his notice of appeal on August 6, 2020, before the entry of the divorce decree.  However, on September 4, 2020, Husband filed an Amended Notice of Appeal to Include Divorce Decree in which he appealed from the July 7, 2020 order and the divorce decree.  Although at the time Husband filed his initial appeal, the divorce decree had not been entered, the appeal was properly before this court because the divorce decree was entered while the appeal was pending. ***Schenk v. Schenk***, 880 A.2d 633, 638 (Pa. Super. 2005) (citing ***Campbell v. Campbell***, 516 A.2d 363 (1986) (stating "although Orders of property distribution are not appealable until entry of a final divorce Decree, case law holds that an award of equitable distribution is appealable where a divorce Decree is entered while an appeal is pending.")).

The trial court set forth the following:

PROCEDURAL HISTORY

A Master's hearing was held on January 13, 2020[,] and the Master's Findings of Fact, Recommendations and Report were filed on February 26, 2020. On March 13, 2020, [Husband] filed Exceptions to the Master's Report. Briefs were timely filed and oral arguments were heard on July 7, 2020. This court entered an order on July 7, 2020 addressing [Husband's] Exceptions. The [c]ourt's disposition follows.

On August 6, 2020, [Husband] filed a Notice of Appeal and on August 7, 2020, this court entered an order directing [Husband] to file his Concise Statement of Matters Complained of on Appeal pursuant to the Pennsylvania Rules of Appellate Procedure, specifically [R]ule 1925(b). [Husband] filed his Concise Statement on August 27, 2020. It is noted that [Husband] filed an Amended Notice of Appeal to include the Decree in Divorce. [Husband's] Amended Notice of Appeal was filed on September 4, 2020.

STIPULATIONS OF THE PARTIES

1. The date of separation is December 26, 2017. (N.T. January 13, 2020, pg. 123 lines 4-9).

2. The current market value of the marital residence, located at 2517 Braddock Avenue, Lower Burrell, Pennsylvania, is $138,000.00. (N.T. January 13, 2020, pg. 24 lines 23-25, pg. 25 line 1)

3. The mortgage payoff amount for the marital residence, as of the date of the Master's hearing, is $94,500.16. (N.T. January 13, 2020, pg. 28 lines 17-20, pg. [29] lines 4-5).

FINDINGS OF FACT

1. [Wife] was born on September 2, 1957[,] and was 62 years[,] 5 months old at the time of the Master's hearing. (N.T. January 13, 2020, pg. 7 lines 18-22). See also Master's Report, February 26, 2020, pg. 2.

2. [Wife] resides in the marital residence located at 2517 Braddock Avenue, Lower Burrell, Pennsylvania. (N.T. January 13, 2020, pg. 16 lines 12-16).

3. [Wife] is employed at Bayer Corporation as a Facility Technician and has been so employed for over thirty (30) years. (N.T January 13, 2020, pg. 17 lines 2-3, pg. 53 lines 15-19).

4. [Wife] will be 66.5 years old in March of 2024.

5. [Husband] was born on March 15, 1955[,] and was 64 years 10 months old at the time of the Master's hearing. (N.T. January 13, 2020, pg. 101 lines 14-15). See also Master's Report, February 26, 2020, pg. 2.

6. [Husband] currently resides in Florida. (N.T. January 13, 2020, pg.116 lines 5-7).

7. [Husband] suffers from Cyclic Vomiting Syndrome and started receiving Social Security Disability in 2006. (N.T. January 13, 2020, pg. 103 lines 1-3, 23-24).

8. Prior to his disability, [Husband] had a variety of jobs, including working as a celebrity impersonator of Ozzy Osbourne and briefly owning his own auto detailing business. (N.T. January 13, 2020, pg. 91 lines 21-22, pg. 98 lines 1-2, pg. 99 lines 19-21).

9. The parties were married on February 7, 1976. (N.T. January 13, 2020, pg. 16 lines 8-9).

10. The parties separated on December 26, 2017. (N.T. January 13, 2020, pg. 123 lines 4-9).

11. The parties were divorced on August 25, 2020.

Trial Court Opinion, 9/23/20, at unnumbered 1-3. (footnote omitted).

The Master's Report contained the following recommendations and findings relevant to this appeal:

8. **The Marital Residence**: *The Master recommends that Wife receive this asset and that she refinance the current mortgage so as to remove Husband from that obligation. If she cannot, the residence should be sold. The Master finds that the marital estate value of the equity is $33,839.84. In the event the residence is sold, Husband is awarded the lesser of one-half of the net proceeds of sale or $16,919.92. This amount is to be adjusted downward by $2,124.27 representing the "payment" to Wife to balance the equitable distribution as described in Number 12 below*. The parties stipulated to a current market value of $138,000.00 and they agreed that this value should be reduced by 7% to reflect the sales commission and transfer tax cost that would be incurred should the property be sold. Wife raised a claim for a further adjustment to reflect a sanitary sewer repair that is common in the City of Lower Burrell. Wife did not have the sewer line visually inspected to determine that it must be replaced (Tr. 75: 2-18). To further reduce the value would be speculative. *The Master recommends that Wife's request for additional reduction be denied.*

9. **Retirement Assets**: *The Master recommends that the marital portion of this asset be divided equally with a Qualified Domestic Relations Order and the costs shared equally. This recommendation is made considering the factors in 25 Pa.C.S. §3502. This division would give Husband immediate access to liquid funds.*

10. **The Motor Vehicles**: *The Master recommends that Husband retain the Dodge Magnum automobile and the Johnny Pag motorcycle. Wife shall continue to possess the vehicle she leases. The Master determined the value of the Dodge automobile is $1,500.00 and the value of [the] motorcycle is $2,749.50 which is dividing the difference between the parties' asserted values.*

11. **Personal Property and Furnishings**: *The Master recommends that Husband's personal belongings listed in his Pretrial Statement be awarded to him and the remainder to Wife with the division considered an equal division*.

12. **Marital Debt**: *The Master recommends that Wife assume the liability for the marital debt including the New York judgment, the RSP loan and, except as set forth above, the mortgage on the marital residence. One half of the balance owed shall be charged to Husband. This is represented in the calculation leading to the equitable distribution payment described below.*

13. **<u>Equitable Distribution Payment</u>**: *The Master recommends that Husband transfer to Wife $2,124.75 to equalize each party's share of the marital estate.*

14. **<u>Permanent Alimony</u>**: *The Master recommends that Husband be awarded alimony in the amount of $500.00 per month through March, 2023 when Wife reaches retirement age.* This recommendation is based on the consideration that Husband will draw from his share of the [Retirement Savings Plan ("401(k)" or "RSP")], the age of the parties, the unlikelihood that either can increase income from other sources, and the relative needs of the parties. The end date of the alimony obligation is based on Wife's testimony that she plans to retire at her full Social Security age, 66.5 years.

Attorney Fees and Expenses

*In light of the availability to Husband of liquid assets, the Master recommends that the parties each pay their own attorney fees and that they share equally in the Master's fee and the costs of the hearing.*

Masters Findings of Fact, Recommendations and Report, 2/25/2020, at 6-9 (emphases in original).

In its July 7, 2020 order, other than changing Wife's retirement date from March of 2023 to March of 2024, the trial court denied Husband's exceptions to the Master' Report. Order, 7/7/20. Husband filed a timely notice of appeal on August 6, 2020. As noted above, both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband presents the following questions for our review:

1. For a complete and accurate analysis of the marital property, and for an appropriate division of the marital estate, must the trial court consider whether the overall Equitable Distribution decision is equitable to both Wife and Husband?

2. For a complete and accurate analysis of marital property, and for an appropriate division of the marital estate, must the trial

court consider whether a 50/50 division or some other division is appropriate to achieve equitable distribution?

3. For a complete and accurate analysis of alimony, and for an appropriate calculation or determination, must the trial court provide a proper explanation or reason for the length of time and the amount ordered was arrived upon and how it is equitable?

4. For a complete and accurate analysis of marital property, and for an appropriate division of the marital estate, must the trial court consider whether the overall Equitable Distribution decision regarding the marital home, marital debt, assets, as well as attorneys fees and expenses is equitable?

Husband's Brief at 6-7.

In his first issue, Husband argues that the trial court abused its discretion because the equitable distribution scheme improperly failed to take into consideration "the remaining years of earning potential of Wife versus Husband, as well as the disparity in social security retirement income of the parties." Husband's Brief at 25. Husband takes issue with the fifty-fifty split of assets and the award of $500.00 per month in alimony payments. In support, Husband avers that his net income from Social Security disability is $13,488.00 per year and Wife's net income is $45,914.40. *Id*. at 17. He further avers that Wife has the ability to increase her income *via* overtime, increases in yearly pay, and her employer's 401(k) match. *Id*. at 18. Husband asserts that because of his low monthly income and reduced alimony award, he will have to deplete the funds he received from Wife's 401(k) in approximately ten years. *Id*. at 24. Husband argues the parties were married for nearly forty-two years, Wife is able to work while Husband is disabled, and

although Husband is retirement age, Wife will reach retirement age in 2024 and will "enjoy more than twice as much income as Husband during retirement years." *Id*. at 23. To that end, Husband asserts that in order to achieve an equitable award, Husband must receive at least 70% of Wife's 401(k) account, a larger portion of equity in the home, and an award of alimony no less than $1,000.00 per month while Wife is working. *Id*. at 25.

When reviewing an award of equitable distribution, we apply the following standard:

> [A] trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017) (quoting *Morgante v. Morgante*, 119 A.3d 382, 386–387 (Pa. Super. 2015)).

"An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Yuhas v. Yuhas*, 79 A.3d 700, 704 (Pa. Super. 2013) (*en banc*). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and this Court will not reverse

those determinations as long as they are supported by the evidence. ***Sternlicht v. Sternlicht***, 822 A.2d 732, 742, n.8 (Pa. Super. 2003). We are also aware that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Childress v. Bogosian***, 12 A.3d 448, 455–456 (Pa. Super. 2011).

Pursuant to 23 Pa.C.S. § 3502, the following factors are relevant to the equitable distribution of marital property:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

     (10)    The economic circumstances of each party at the time the division of property is to become effective.

     (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

     (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

     (11)    Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a)(1)-(11).

We have held that "[t]he weight to be given these factors depends on the facts of each case and is within the court's discretion. We will not reweigh them." **Busse v. Busse**, 921 A.2d 1248, 1260 (Pa. Super. 2007) (citation omitted). In determining the propriety of an equitable distribution award we must consider the distribution scheme as a whole. **Mercatell v. Mercatell**, 854 A.2d 609, 612 (Pa. Super. 2004). Finally, "we also remain cognizant that 'we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.'" **Schenk v. Schenk**, 880 A.2d at 644 (quoting **Heyward v. Heyward**, 868 A.2d 554, 557-558 (Pa. Super. 2005)).

The trial court set forth the following analysis regarding the equitable distribution of the marital property:

     The court believes that the Equitable Distribution decision made by the Master and adopted by this court with the additional one (1) year of alimony is equitable in light of the testimony and evidence presented to the Master and reviewed by this court. [Husband] worked random jobs during the course of the marriage with his longest and most stable employment being the seven (7)

years he worked for Springdale Specialty Plastics. (N.T. January 13, 2020, pg. 43, lines 24-25, pg. 44 line 1). [Husband] made little financial contribution to [the] household during the course of the marriage. [Husband] was only able to reference household purchases he made as occurring after he started collecting social security disability benefits. (N.T. January 13, 2020, pg. 114 lines 8-17).

[Wife] has worked for the same employer for thirty (30) years and has paid the mortgage, taken out loans against her [401(k)] to get [Husband] a car and a motorcycle and paid for his failed business endeavors throughout the course of the marriage. At one point, [Wife] had to obtain a credit card machine for [Husband] to use in his auto detailing business. [Husband] failed to pay for the credit card machine which resulted in a judgment being placed against [Wife] and in [Wife's] name only. The judgment is in the amount of $2,124.75 and is still in place today. [Husband] has made no effort to pay that debt and clear it from [Wife's] credit report. (N.T. January 13, 2020, pg. 100 lines 13-14). [Wife] has maintained the marital residence with no help from [Husband] and has continued to pay the loans against her [401(k),] thus providing [Husband] with a car and a motorcycle. [Wife] currently leases a vehicle which she also pays for.

[Husband] was awarded one half of the value of the equity in the marital residence ([one-]half of $33,839.84). If the residence is sold, [Husband] is to receive the lesser of one-half of the net proceeds of sale or $16,919.92. [Husband's] amount was adjusted downward by $2,124.75 which represents payment to [Wife] for [Husband's] credit card machine judgment. [Husband] was also awarded his vehicle, an equal share of [Wife's] Retirement Savings Plan and an equal share of the parties' property and furnishings. The combined marital debt (not including the mortgage) was divided equally among the parties.

Based on [Husband's] limited contributions to the marital estate over the course of the marriage, the court finds that the Master's equitable distribution decision, with the additional year of alimony, is more than equitable to [Husband].

Trial Court Opinion, 9/23/20, at unnumbered 5-6 (footnote omitted).

In the instant case, the trial court underscored the fact that Wife's contributions to the marital estate were significantly higher when compared to Husband's limited contributions, even before he began collecting Social Security disability benefits. After review, we do not find that the trial court abused its discretion in its equitable distribution decision. *Mercatell*, 854 A.2d at 612 (trial court did not abuse its discretion in dividing the marital estate and awarding sixty percent of the marital property to wife, who was primarily responsible for building the marital estate by working several jobs and husband was underemployed throughout the marriage). Further, as discussed above, the weight to be given the statutory factors is within the court's discretion, and we may not reweigh them. *Busse*, 921 A.2d at 1260. The equitable-distribution scheme set forth by the trial court was well considered and within the realm of its discretion. We discern no reason to disturb it.

In support of his second issue on appeal, Husband argues that the trial court abused its discretion in finding that a fifty-fifty split of the parties' retirement assets was equitable for Husband.[2] Husband's Brief at 25. Husband avers that because he is disabled, "there is really no other source by which Husband can acquire assets or income in which to maintain even the reasonable standard of living that he enjoyed through the pendency of

_____

[2] Although Husband refers to the parties' retirement assets, Wife's 401(k) is the only retirement asset at issue.

the divorce." *Id*. at 26. Thus, he argues, if he and Wife are to equally split the equity in the home and Husband is to receive a lower monthly alimony amount, "he must receive a much larger share of the 401(k) for equitable distribution to be achieved." *Id*. at 26-27. Husband argues that he worked various jobs during the time that Wife was not working full-time from 1976 until 1990. *Id.* Husband further alleges "it is evident that Husband contributed to the marriage and substantially to the marriage income at various times throughout the marriage." *Id*. Husband asserts that he must be awarded at least 70% of Wife's 401(k) and alimony of no less than $1,000.00 per month while Wife is working, in order for equitable distribution to be achieved. *Id*. at 29.

The trial court set forth the following discussion of Husband's second claim of error:

> The court disagrees that a 50/50 split of [Wife's] retirement assets is not equitable to [Husband]. As previously stated, [Husband] contributed very little to the financial resources of the marriage. [Husband] seems to think that he should receive additional compensation because he is receiving less social security benefits a month than [Wife] will receive when she retires. [Husband] believes he should receive a higher percentage of [Wife's 401(k)] to compensate him for the disparity.
>
> [Wife] has maintained gainful employment throughout the marriage and has worked for the same employer for the last thirty (30) years. The testimony at the Master's hearing was that [Wife] maintained the marital residence and paid the marital bills with little to no help from [Husband]. [Husband] has reaped the benefits of [Wife's] steady employment and payment of all the household expenses for the length of the marriage and continues to reap those benefits after the separation and divorce.

As stated above, [Husband] worked basically one (1) legitimate steady job for a period of seven (7) years during the entire course of the marriage. He was forced out of that position due to his disability. While the court is empathetic to [Husband's] disability, the court also recognizes that the disparity in social security benefits as well as available retirement assets is a situation [Husband] created.

After considering the length of marriage, the age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each party, the opportunity of each party for future acquisitions of capital assets and income, the sources of income of both parties, including, but not limited to, medical, retirements, insurance or other benefits, the contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker, the standard of living of the parties established during the marriage and the economic circumstances of each party at the time the division of property is to become effective, the court finds that a 50/50 division of [Wife's 401(k) account] Plan is equitable to [Husband].

Trial Court Opinion, 9/23/20, at unnumbered 8-9.

As with Husband's first issue relating to the equitable distribution of the parties' marital property, we find no abuse of discretion in the second issue. The trial court reviewed the factors set forth in 23 Pa.C.S. § 3502(a) and determined that a fifty-fifty division of Wife's 401(k) was equitable to both parties. After review of the record, we discern no abuse of discretion.

In his third issue, Husband avers that the trial court abused its discretion or committed an error of law when it awarded Husband alimony in the amount of $500.00 per month through March of 2024. Husband's Brief at 29. Husband argues that while Wife continues to work, "the disparity in

- 13 -

income is huge." *Id*. at 32. According to Husband, Wife's income per month is $3,439.25 higher than his, even when she was paying $1,000.00 per month in spousal support. *Id*. at 33. He further contends that neither the Master nor the trial court provided an explanation for the reduction in alimony and argues that it was chosen arbitrarily. Husband argues that Wife should continue to pay him $1,000.00 per month until she retires, then pay a reduced rate when she begins to receive Social Security, or Husband should have been awarded a larger portion of Wife's 401(k) account. *Id*.

We apply the following standard when reviewing an award of alimony:

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that "[t]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." Alimony "is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." Moreover, "[a]limony following a divorce is a **secondary remedy** and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill."

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (citing *Moran v. Moran*, 839 A.2d 1091, 1096-1097 (Pa. Super. 2003)) (emphasis in original). When determining whether to award a party alimony and the amount, duration, and manner of alimony, a court shall consider the following factors:

(1) The relative earnings and earning capacities of the parties.

(2)  The ages and the physical, mental and emotional conditions of the parties.

(3)  The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4)  The expectancies and inheritances of the parties.

(5)  The duration of the marriage.

(6)  The contribution by one party to the education, training or increased earning power of the other party.

(7)  The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8)  The standard of living of the parties established during the marriage.

(9)  The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10)  The relative assets and liabilities of the parties.

(11)  The property brought to the marriage by either party.

(12)  The contribution of a spouse as homemaker.

(13)  The relative needs of the parties.

(14)  The marital misconduct of either of the parties during the marriage.  The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15)  The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b)(1-17).

The trial court set forth the following analysis of Husband's alimony argument:

[Husband] alleges that the court erred in decreasing the monthly alimony award to $500.00 and for terminating the alimony payments upon [Wife] turning 66.5 years old. The court relied on the Master's report and recommendation as well as the testimony and evidence presented at the Master's hearing and finds the amount of alimony awarded as well as the termination of the alimony obligation when [Wife] becomes full retirement age are fair and equitable given the age of the parties, the parties' respective health, their station in life, their sources of income, their vocational skills, their employability and their individual needs. [Husband] argues that the Master properly states the reasons for his award of alimony but that the Master's reasoning is flawed. As previously stated, the Master found the alimony award of $500.00 per month until March 2024 to be fair and equitable based on the consideration that [Husband] will draw from his share of the retirement saving plan, the age of the parties, the unlikelihood that either can increase their income from other sources, and the relative needs of the parties.

[Husband] argues that the Master failed to consider that [Husband] has to pay taxes on his portion of the retirement saving plan and that while [Husband] is depleting his portion of the retirement savings plan, [Wife] will be building up her portion of the retirement savings plan. While it is not clear from the record whether the Master considered the arguments raised by [Husband], the court finds that the alimony award and duration are equitable to [Husband].

[Husband] wants to ignore the fact that [Wife] has to work overtime to be able to continue to pay him the $1,000.00 a month that was previously ordered. (N.T. January 13, 2020, pg. 45 lines 2-11). [Wife] testified that was the only way she could survive financially. (N.T. January 13, 2020, [pg. 45] line 5). The Master and the court found [Wife's] testimony to be credible. [Husband] wants to argue for a higher alimony award for a longer period of time but fails to consider [Wife's] ability to pay. [Wife] has been able to keep current on all of the bills and mortgage payments because she has been able to work overtime. [Husband] is lucky that [Wife] was able to work overtime as it provided her the ability to preserve and maintain what few marital assets exist in this case. There is no guarantee that [Wife] will continue to have overtime hours available to her. [Husband] has been receiving $1000.00 a month in alimony since February 7, 2018 in addition to his monthly social security disability payments. He was also ordered to receive a portion of the equity in the marital home, an asset that [Wife] has paid for and maintained during the course of the marriage and throughout the separation and a 50% portion of [Wife's] retirement savings account which [Husband] can start to draw on should he need the money. While [Husband's] alimony amount was reduced to $500.00 per month, the court did extend the payment of that amount one (1) additional year so that [Husband] will continue to receive alimony payments until [Wife] is age 66.5 years. The court believes that terminating [Wife's] alimony obligation at her official retirement age, in light of the fact that she testified that she would not work past that age, is reasonable and equitable especially given the parties' age, station in life, their respective contributions during the marriage and their efforts to preserve the marital assets after separation.

Trial Court Opinion, 9/23/20, at unnumbered 12-14 (footnote omitted).

A review of the record in the instant case, as well as the trial court's opinion, clearly supports the trial court's consideration of the factors set forth in 23 Pa.C.S. § 3701(b)(1-17) of the Divorce Code. As the trial court noted, ability to pay is among the factors that a court should consider when determining whether to award alimony. *Brubaker v. Brubaker*, 201 A.3d

180, 190 (Pa. Super. 2018). The Master recommended and the trial court found that Wife testified credibly that she had to work overtime in order to pay Husband $1,000.00 per month that was previously ordered. Further, the trial court properly noted that Husband was awarded a portion of the equity of the home, an asset paid for and maintained by Wife, as well as 50% of Wife's 401(k) account, as part of the equitable distribution of the marital estate. We discern no abuse of discretion in the trial court's award of alimony.

In his final issue, Husband avers that the trial court abused its discretion or committed an error of law "in its calculation or determination for equitable distribution regarding the marital home, marital debt, the motorcycle and attorneys fees and expenses." Husband's Brief at 34.

First, Husband reiterates his earlier argument that his share of the equity in the home should be greater. Husband's Brief at 25. Husband also states that the Master's report, as adopted by the trial court, is worded in such a manner that Husband will not receive 50% of the equity in the home if it sells for more than $138,000.00. *Id*.

We previously set forth our standard of review for an award of equitable distribution. Once again, we find the trial court did not abuse its discretion in awarding Husband his share in the marital home. Indeed, as the trial court noted, Wife paid for and maintained the marital home with little to no help from Husband. Trial Court Opinion, 9/23/30, at unnumbered 15. Further, Husband cannot afford to pay the mortgage or maintain the home, and it was

through Wife's actions alone that the home remained a marital asset rather than becoming a marital debt. *Id*. We have thoroughly reviewed the record in this case and find no abuse of discretion or error of law in the trial court's equitable-distribution scheme as it relates to the marital home.

Husband next contends that the trial court and Master erred related to the marital debt. Husband's Brief at 35. Specifically, Husband argues:

> The Master made a finding that there were two loans: one from Wife's 401(k) with a date of separation balance of $6,444.22 and a "second debt secured by Wife's RSP that was used to purchase Husband's automobile. Wife paid this debt off paying $1,800.00." (Masters Recommendation Page 5, paragraph 5). However, the value of all of the outstanding loans at the time of separation was $6,444.22, which already included the $1,800 that Wife Paid off. (See 401(k) statement dated December 2107 and Defendant's Exhibit 14.) "Plain error is found where the decision is based on factual findings with no support in the evidentiary or legal factors other than those that are relevant to such an award." *Diament v. Diament*, 816 A.2d 256, 270 (Pa. Super. 2003)

Husband's Brief at 36. Husband's argument relating to marital debt is confusing and unclear as to his claim that the trial court abused its discretion or committed an error of law. We will not act as counsel for Husband and develop arguments on his behalf. ***Irwin Union Nat. Bank and Trust Co. v. Famous***, 4 A.3d 1099, 1103 (Pa. Super. 2010). Thus, we find the issue waived. *Id*.

Husband also posits that Wife testified there was a judgment against her from Northern Leasing Systems in the amount of $2,485.62. Husband's Brief at 36. Husband avers that in the exhibit accompanying that testimony,

- 19 -

an offer to settle the debt for $1,491.37 was made. *Id*. Husband then asserts, without citation to relevant testimony, that neither Wife nor her counsel informed Husband of this offer. Although Husband has included a copy of a document that he alleges was an exhibit in the Reproduced Record, we note that he fails to state the exhibit number and set forth where in the certified record the exhibit was entered into evidence. Following extensive review of the transcript of the Master's hearing and the exhibits entered thereto, we are unable to locate where the exhibit was entered into evidence or a copy of the exhibit.

Pa.R.A.P. 2119 addresses arguments in appellate briefs and corresponding references to the record and provides, in relevant part, as follows:

> **If reference is made to the** pleadings, **evidence**, charge, opinion or order, or any other matter appearing in the record, **the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears** … .

Pa.R.A.P. 2119(c) (emphases added).

It is not the role of this Court to develop an argument for a litigant or to scour the record to find specific evidence to support an appellant's arguments. ***J.J. DeLuca Co. Inc. v. Toll Naval Assocs.***, 56 A.3d 402, 411 (Pa. Super. 2012) (quoting ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007)). Therefore, "[w]hen an allegation is unsupported [by] any citation to the record, such that this Court is prevented from assessing this

- 20 -

issue and determining whether error exists, the allegation is waived for purposes of appeal." ***Commonwealth v. Harris***, 979 A.2d 387, 393 (Pa. Super. 2009) (citing Pa.R.A.P. 2119(c)).[3]

Next Husband asserts that the trial court erred when it awarded the Johnny Pag motorcycle to Husband. Husband's Brief at 37. Husband argues that even though the motorcycle is titled in his name, he does not want it and has no way to retrieve it. ***Id***. Husband further avers, without relevant citation, that because it will cost more than the value of the motorcycle to ship it to Florida or allow Husband to retrieve it, it should have been awarded to Wife. ***Id***. Once again, we note that Husband's argument is based upon facts that are not in the record. Husband testified that he did not have the means to transport the motorcycle to Florida. No testimony was presented regarding the cost of doing so versus the value of the motorcycle. Further, we note that although Husband testified that he believed the motorcycle was valued at approximately $500.00, the master found it to be worth $2,749.50, an amount Husband does not dispute. Master's Report, 2/26/20, at 7.

The trial court set forth the following analysis relating to the motorcycle:

> [Husband] claims that it is [a] hardship for him to retrieve the motorcycle from the marital residence[,] and the costs of

---

[3] Husband also asserts that the Master improperly "indicated" that a lien was filed against the marital home because of this judgment; he argues that there was no testimony establishing this fact. Husband's Brief at 37. This statement is belied by the record. Wife specifically testified that a lien was taken against the marital home because the judgment was not paid. N.T. (Master's Hearing), 1/13/20, at 26.

bringing the motorcycle back to Florida with him are overly burdensome. The court finds that while [Wife] paid for [Husband's] motorcycle, it was never her vehicle. [Husband] could have easily taken the motorcycle with him when he left the marital residence in December of 2017. Additionally, [Husband] has a number of options to dispose of the motorcycle including selling it here in Pennsylvania. The court finds this to be another example of [Husband] creating an issue and expecting [Wife] to clean up his mess. [Husband] wanted the motorcycle and [Wife] paid for him to have the motorcycle. Now, because [Husband] decided to relocate to Florida, he feels that [Wife] should be responsible for dealing with it. The court additionally notes that [Husband] has requested numerous pieces of personal property from the marital residence, including his grandmother's stuff, his grandfather's stuff, jewelry, clothing, his Ozzy paraphernalia, items that were his parents, childhood items, Glenn Turner books and tapes and sports paraphernalia including his football jerseys. (N.T. January 13, 2020, pg. 121 lines 2-12). … [Wife] testified that [Husband's] items are all boxed up and sitting in the garage of the marital residence waiting for him to retrieve them. (N.T. January 13, 2020, pg. 40 lines 4-11).

It is the position of this court that it is not [Wife's] responsibility to ship [Husband's] personal items to Florida especially when [Husband] left those items behind and voluntarily moved to Florida. The court believes that when [Husband] makes arrangements to obtain his personal items from the marital home, he can make arrangements to retrieve the motorcycle.

Trial Court Opinion, 9/23/20, at unnumbered 17-18. Given all of the above, we discern no error or abuse of discretion in the trial court's award of the motorcycle to Husband.

Finally, Husband argues that the trial court erred when it failed to award him attorneys' fees. Husband's Brief at 38. As we previously have held:

We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action

without being placed at a financial disadvantage; the parties must be 'on par' with one another.

Counsel fees are awarded on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate. Also pertinent to our review is that in determining whether the court has abused its discretion, we will not usurp the court's duty as fact finder.

**Brubaker**, 201 A.3d at 191 (citing **Busse**, 921 A.2d at 1258).

In the instant matter, the Master recommended that each party pay his own attorney fees and share equally in the Master's fee and cost of the hearing. The trial court adopted the Master's recommendation for the following reasons:

In the instant case, neither [Husband] nor [Wife] is … in a great financial position. [Husband] is living on social security disability payments and alimony and [Wife] is working, paying alimony and paying the majority of the debt from the marriage. [Husband] testified that he does not have enough money to cover his expenses and [Wife] testified that she is working overtime every chance she gets to make ends meet. (N.T. January 13, 2020, pg. 45 lines 2-11, pg. 113 lines 12-14). The court finds that both parties testified credibly on this matter and that neither [Wife] nor [Husband] is living extravagantly. The purpose of an award of counsel fees and expenses is to financially equalize the parties so that no one party has an advantage over the other simply because one of the parties has more access to financial resources. The court finds that [Wife] and [Husband] are on par with each other financially and that both [Wife] and [Husband] are barely making ends meet every month. For this reason, the court agrees with the Master's recommendation to deny [Husband's] request for counsel fees and expenses. Both [Husband] and

- 23 -

[Wife] had access to legal counsel and neither one of them was prejudiced by their current financial position with regard to fully litigating this matter.

Trial Court Opinion, 9/23/20, at unnumbered 19-20.

As has been repeatedly noted by the Master and the trial court, Husband and Wife have limited means and a small marital estate. Indeed, although there is a disparity in the total income of the parties, both parties testified that they struggled to make ends meet and neither lives an extravagant lifestyle. Wife testified that she works overtime in order to be able to afford to pay Husband alimony. The trial court did not abuse its discretion in finding that both parties should pay their own attorney fees and split the cost of the Master's report and hearing. **Teodorski**, 857 A.2d at 201 (finding no abuse of discretion where the trial court had a "reasonable rationale" for its decision to award Wife less money for counsel fees than the Master recommended). Husband is due no relief on these grounds. For all the foregoing reasons, the order is affirmed.[4]

Order affirmed.

---

[4] We note that in her brief, Wife stated that she had been laid off by her employer and, as of the time of the filing of her brief, was hospitalized due to brain tumors. Although this Court is sympathetic to Wife's current situation, we did not, and indeed could not, consider facts that are not of the record in upholding the trial court's order. **Johnson v. Johnson**, 153 A.3d 318, 322 (Pa. Super. 2016).

- 24 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  05/11/2021